In the Matter of JOHN FRANZ, a Child Alleged to be Neglected. BARBARA FRANZ, Appellant; RAY SHIPMAN, as Representative of the Board of Education of the City of New York, et al., Respondents.

In the Matter of PETER FRANZ and Another, Children Alleged to be Neglected. BARBARA FRANZ, Appellant; RAY SHIPMAN, as Representative of the Board of Education of the City of New York, et al., Respondents.

Second Department, January 24, 1977

*Steven M. Schwartz (Gail S. Zigman* and *Robert Mark* on the brief), for appellant.

COHALAN, J. The appellant, Barbara Franz, a widow, is the mother of three children of compulsory school attendance age. Because the youngest child John, then aged six and one-half years, was not doing well in reading and arithmetic at public school, she kept him at home with the avowed intention of teaching him herself, in seeming defiance of the provisions of article 65 of the Education Law.

A month or two later she also removed Peter and Susan, then aged 11 and 13, respectively, from school. Peter was

removed for no stated reason, but Susan was indulged by her mother when she discontinued attending classes because she thought she had had enough schooling. Again, the mother insisted that she could teach them anything else they needed to know, even though her own formal education ended upon graduation from high school.

In due course the school authorities, after trying in vain to persuade Mrs. Franz to abandon her adamant position, commenced appropriate proceedings in the Family Court to have the children declared neglected within the meaning and intent of article 10 of the Family Court Act (§ 1012, subd [f], par [i], cl [A]).

The first petition was directed against her as to John alone. The second, filed shortly thereafter, concerned itself with Susan and Peter.

In two separate and rather protracted proceedings—with expert educators called as witnesses for each side in John's matter—two different Family Court Judges arrived at the same conclusion, namely, that the children were neglected under the provisions of the Family Court Act.

It is from the orders of disposition entered upon their decisions that Mrs. Franz now appeals. The appeals have been consolidated.

In both instances the children were discharged to their mother and she was placed on probation for a period of one year on condition that the youngsters attend school. Mrs. Franz has complied with the orders.

We affirm.

We treat first the appeal as it concerns John, the youngest child.

Subdivision 3 of section 3204 of the Education Law defines "Courses of study." Clause (1) of paragraph a of subdivision 3 reads: "The course of study for the first eight years of full time public day schools shall provide for instruction in at least the twelve common school branches of arithmetic, reading, spelling, writing, the English language, geography, United States history, civics, hygiene, physical training, the history of New York state and science."

The trial court found—and we do not question—that the mother made sincere efforts to furnish the child with all of the educational requirements. The record indicates, however, that she was better versed in some of the common branches

than she was in others, and in some she was not qualified at all. The indication was, also, that if John showed interest in a particular subject, undue emphasis was placed on that item to the consequent neglect of others. Also, she set aside only one and one-half hours per school day for his instruction as against the school's period for instruction, which covered five hours daily.

Therefore, while "[t]here is no provision in the Education Law which prohibits instruction of children at home, nor is there any provision requiring certification of a parent by the Commissioner of Education before she may teach her children at home" *(People v Turner,* 277 App Div 317, 319), we agree with the Family Court that Mrs. Franz could not, and did not, successfully carry the burden which she elected to shoulder.

Section 3205 (subd 1, par a) of the Education Law states that "[i]n each school district of the state, each minor from six to sixteen years of age shall attend upon full time instruction", with certain nonrelevant exceptions.

Subdivision 1 of section 3204 notes, in part, that "a minor required to attend upon instruction * * * may attend at a public school or elsewhere." Subdivision 2 goes on to provide that "[i]nstruction may be given only by a competent teacher * * * Instruction given to a minor elsewhere than at a public school shall be at least substantially equivalent to the instruction given to minors of like age and attainments at the public schools of the city or district where the minor resides."

Mrs. Franz seized upon the expression "substantially equivalent" as an excuse for taking John out of school; and later, Susan and Peter.

In the case of the older children, heard after the matter of John Franz had been decided, Mrs. Franz was faced with the statutory presumption of section 1046 (subd [a], par [i]) of the Family Court Act, which provides that "proof of * * * neglect of one child shall be admissible evidence on the issue of the * * * neglect of any other child of, or the legal responsibility of, the respondent".

With this hurdle to overcome, plus the lack of any expert witness to support the position of the appellant in removing Peter and Susan from school, as had been offered in John's case, it was a foregone conclusion that the same result would be reached.

Poignantly as to Susan, she has indicated a desire to become

a psychiatrist. How that can be accomplished, in view of her mother's intransigent attitude and Susan's lack of extensive formal education, is beyond comprehension.

In seeking to have us reverse the two separate determinations of the Family Court, the appellant attacks the compulsory features of the Education Law as unconstitutional on three grounds.

### (1)

Subdivision 2 of section 3210 of the Education Law provides for: "Attendance elsewhere than at a public school. a. Hours of Attendance. If a minor included by the provisions of part one of this article attends upon instruction elsewhere than at a public school, he shall attend for at least as many hours, and within the hours specified therefor."

The appellant argues that she can teach her child as much in one and one-half hours per day as the school system can in five. To support the argument, she notes that where one teacher must deal with 25 or 30 pupils, the time differential is explained by the diffusion of information and instruction that must be imparted in dealing with fast learners and slow ones, and with the necessary diversions and distractions that occur with a great number of children, as contrasted with the channeled focus of imparting knowledge to one child. The argument does not bear scrutiny in light of the circumstance that education consists as much in the teacher's interrelation with all the other children in a classroom as it does with any individual child. In theory, at least, each child is learning from his classmates as he hears then recite—or answer questions—or ask questions that elicit a response from the instructor. We see, then, no justifiable reason for allowing home study to be limited to one and one-half hours as against the school requirement of five. In our view, the five-hour requirement is not arbitrary in nature; nor does it impinge upon any constitutional right.

In *Matter of Thomas H.* (78 Misc 2d 412), three children, aged 13, 12 and 10 (all of elementary school age), were taught at home by their parents. There, each of the parents had a formal education far superior to that of the appellant. Nevertheless, the court said (p 419): "The proof here shows a lack of consistent quality in subject instruction, if not an absence of instruction in some areas and it shows the absence of a systematic approach to the course of study of the branches

specified in the statute and regulations. These instructions are not adequate and the program, viewed as a whole, constitutes an attempt to evade the Compulsory Education Law"; and immediately before the above-quoted paragraph, the court noted (pp 418-419): "Nor does the proof show their compliance with * * * the daily hours of attendance required under section 3210 (subd. 2, par. a) of the Education Law."

## (2)

The appellant's second constitutional point is that the compulsory features of the Education Law impinge upon the fundamental guarantee of privacy.

The rationale of this argument is that Mrs. Franz holds a sincere moral and philosophical belief that the children can best be taught at home under her sole and individual guidance; and that she should therefore be allowed her own way.

The public school system was first established in New York State by chapter 242 of the Laws of 1812. Prior thereto, children attended private schools, generally religious or denominational in character; or studied under private tutors, or learned their ABCs and their three Rs at their mother's knee.

Gradually, over the decades, the State solidified its power and position in the field of education. By chapter 556 of the Laws of 1894 the Legislature enacted the Consolidated School Law. The same year, by chapter 671, the Legislature added a new title 16 to the Consolidated School Law, section 3 of which provided for compulsory school attendance. title 16, section 3 (derived from the Consolidated School Law of 1894), the Legislature added chapter 671 of the Laws of Section 3205 of the Education Law is the end result of that law and, as a consequence, home teaching, with some exceptions, has become almost an anachronism.*

To support her point that compulsory education is an invasion of privacy, the appellant cites *Pierce v Society of Sisters* (268 US 510). That Oregon case dealt with a State law requiring that all children within a certain age range must attend public school.

As in Oregon prior to the *Pierce* case there were—and perhaps still are—people in our society who read the First

---

* Section 3205 (subd 1, par a) of the Education Law refers to "each minor from six to sixteen years of age"—subdivision 11 of section 2 of the Education Law still reads "between seven and sixteen years of age".

Amendment (as to religion) as an absolute. They read that "Congress shall make no law respecting an establishment of religion", but ignore the following clause, "or prohibiting the free exercise thereof". In *(Pierce (supra),* this type sought unsuccessfully to close the parochial schools, which concededly could, and did, impart an education equivalent to that of the public schools.

On the other hand, we have individuals, such as the appellant, who take the subjective approach that each parent can chart the destiny of her own children with respect to education, at least at the elementary and secondary school levels.

Our State Education Law strikes a happy balance between the two schools of thought. There is no rigid, robotlike regimentation of children; nor, conversely, can each child step to the music that he hears, however measured or far away. The State's interest in education is, to a degree, paramount.

For, as stated in *Jacobson v Massachusetts* (197 US 11, 26): "There are manifold restraints to which every person is necessarily subject for the common good. On any other basis organized society could not exist with safety to its members. Society based on the rule that each one is a law unto himself would soon be confronted with disorder and anarchy."

Appellant also cites *Wisconsin v Yoder* (406 US 205) and seeks to include her individual circumstance within the framework of that case. In *Yoder,* the parents were convicted of violation of the State's compulsory school attendance law. They had refused to continue their children in public school after the children (aged 14 and 15) completed the eighth grade.

The parents in *Yoder* were members of the Amish sect. Their creed included a belief that attendance at high school would expose their children to the risk of censure from the church community and would endanger both their own hope of salvation and that of their children.

With this set of facts before it, the Supreme Court said, in part, by Chief Justice BURGER (pp 213-214): "There is no doubt as to the power of a State, having a high responsibility for education of its citizens, to impose reasonable regulations for the control and duration of basic education. See, *e.g., Pierce v. Society of Sisters,* 268 U. S. 510, 534 (1925). Providing public schools ranks at the very apex of the function of a State. Yet even this paramount responsibility was, in *Pierce,* made to yield to the right of parents to provide an equivalent educa-

tion in a privately operated system. There the Court held that Oregon's statute compelling attendance in a public school from age eight to age 16 unreasonably interfered with the interest of parents in directing the rearing of their offspring, including their education in church-operated schools. As that case suggests, the values of parental direction of the religious upbringing and education of their children in their early and formative years have a high place in our society. See also *Ginsberg v. New York,* 390 U. S. 629, 639 (1968); *Meyer v. Nebraska,* 262 U. S. 390 (1923); cf. *Rowan v. Post Office Dept.,* 397 U. S. 728 (1970). Thus, a State's interest in universal education, however highly we rank it, is not totally free from a balancing process when it impinges on fundamental rights and interests, such as those specifically protected by the Free Exercise Clause of the First Amendment, and the traditional interest of parents with respect to the religious upbringing of their children so long as they, in the words of *Pierce,* 'prepare [them] for additional obligations.' 268 U. S. at 535."

However we may try to fit the appellant's argument, procrustean-like, into *Yoder,* there is no credible analogy between the two.

Finally, the argument is advanced that in reality the compulsory feature of education has been debased to the point that it has become merely a compulsory attendance law. As such, the argument runs, it must be deemed unresponsive to the purposes and intentions of the legislators and must therefore be set aside as unconstitutional.

That argument is somewhat akin to throwing out the baby with the bathwater, or burning down the barn to get rid of the rats. The point requires no further comment.

There is a paucity of cases among appellate decisions in our State dealing with the general question of compulsory education. Those that we have do not address themselves directly to our factual circumstances. As examples, we point to *People v Donner* (302 NY 857, affg 278 App Div 705 [conviction under Education Law, §§ 3204, 3205 and 3212 for sending children to a school where the teaching was not in English and where there was no instruction in the common branches]), *Matter of Auster (Weberman)* (302 NY 855, affg 278 App Div 656 [custody proceeding where child was allegedly enrolled in a school not approved by the State Board of Regents]) and *Matter of Oliver v Donovan* (32 AD2d 1036, 1037), where, by way of obiter dictum, our court stated that: "Petitioner [mother] has

the duty to send her children to the public schools and the concomitant right to expect that they will not be subject to physical abuse and danger at the hands of the very school officials to whom petitioner has entrusted her children (Education Law, § 3205, subd. 1; § 3212, subd. 2, par. b; § 3228)."

We share a feeling of empathy with Mrs. Franz. We know that she desires to do what is best for her children for their betterment and for their future careers. No one could be more sincere. But we echo the sentiments of Jeremy Bentham that the morality of actions is estimated by their utility. As translated into an apothegm, it is "the greatest happiness of the greatest number."

The other points raised by the appellant have already been discussed. We see no reason to pursue them further.

HOPKINS, Acting P. J. and SUOZZI, J., concur; SHAPIRO, J., concurs in the result.

Two orders of the Family Court, Queens County, dated March 15, 1976 and May 21, 1976, respectively, affirmed, without costs or disbursements.