Matter of Puah B. (Autumn B.--Hemerd B.) (2019 NY Slip Op 04451)





Matter of Puah B. (Autumn B.--Hemerd B.)


2019 NY Slip Op 04451


Decided on June 6, 2019


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on June 6, 2019

Acosta, P.J., Richter, Manzanet-Daniels, Tom, Moulton, JJ.


8567

[*1]In re Puah B., and Others, Children Under the Age of Eighteen Years, etc., Autumn B., Respondent-Appellant, Administration for Children's Services, Petitioner-Respondent, Hemerd B., Respondent.


Law Office of Randall S. Carmel, Jericho (Randall S. Carmel of counsel), for appellant.
Zachary W. Carter, Corporation Counsel, New York (Aaron M. Bloom of counsel), for respondent.
Dawne A. Mitchell, The Legal Aid Society, New York (Judith Stern of counsel), attorney for the children.



Order of fact-finding and disposition, Family Court, Bronx County (David J. Kaplan, J.), entered on or about July 13, 2017, insofar as it determined, after a hearing, that respondent mother neglected the subject children, modified, on the law and the facts, to vacate the finding that the mother neglected the children by failing to provide them with adequate food, clothing and shelter, and remand the matter for a new dispositional hearing, and otherwise affirmed, without costs.
We conclude that the Family Court erred in finding neglect and derivative neglect for failure of the mother to provide adequate food, clothing and shelter, because the caseworker's progress notes and the police officer's testimony about her observations from a single visit made to the home were insufficient to support a determination that the mother neglected the subject children (Family Court Act § 1012[f][i][A]). Although the mother's living conditions were unsuitable, the record presents no basis for a conclusion that the children's "physical, mental or emotional condition ha[d] been impaired or [wa]s in imminent danger of becoming impaired" as a result of their exposure to such environment (Family Court Act § 1012[f][i]). The officer's testimony provided no information about the physical or mental condition of the children at the time of her visit, and petitioner did not introduce the results of the medical examination of the children conducted on the day when they were first removed from the home.
However, a preponderance of the evidence supports the court's findings of educational neglect as to the two older children and derivative neglect as to the younger children. The record shows that during the 2015-2016 school year, the older children were at least six years old and were required to receive full-time educational instruction. The court found that the children were not enrolled in school and that the mother failed to cooperate with authorities or follow proper procedures for home schooling despite her testimony that she had thoroughly researched the requirements set by the Commissioner of Education (see Matter of Rakeem M. [Marissa M.], 139 AD3d 622 [1st Dept 2016]). The court further found that, while the mother's passion for education was compelling, her stated efforts to educate the children did not comport with the legally set guidelines for home schooling in any way (see Matter of Dyandria D., 303 AD2d 233 [1st Dept 2003], lv dismissed 1 NY3d 623 [2004], cert denied 543 US 826 [2004]). The court [*2]found that the mother did not establish that she was qualified to teach, especially with respect to elementary-school-aged children. The mother admitted that she knew her educational plan was not approved by the Board of Education, yet, she never followed up with an approved individual home instruction plan as required by the Board of Education. The court found that the mother failed to show that her instruction was substantially equivalent to that in public school, and that the children were educated for at least as many hours as provided in public school (see Matter of Dyandria D., 303 AD2d at 233; Matter of Franz, 55 AD2d 424 [2d Dept 1977]). The court further found that the mother's use of college-level textbooks and testing the children using high school examination tests did not constitute appropriate education for elementary-school-aged children. We defer to these findings of the Family Court. Nor do we find any basis on which to credit the mother's claims on which the partial dissent relies, which are essentially self-serving. Moreover, in the complete absence of documentation, her claims are unsupported. The extent to which the children may have been harmed by the absence of adequate education would be better evaluated if the children were allowed to be tested, but that would require a degree of cooperation that the record indicates has not been forthcoming from the parents. Nor does the mother persuasively explain how she spends 25 hours each week homeschooling the children when she also claims to be employed at an advertising firm in downtown Manhattan. We find no basis on which to disturb the Family Court's credibility findings. It is well established that the Family Court's assessment of the credibility of witnesses is accorded great deference on appeal (Matter of Troy B. [Troy D.], 121 AD3d 570 [1st Dept 2014]). Since the mother failed to offer credible evidence that the children were being home schooled in accordance with the Department of Education's requirements, the finding of educational neglect with respect to the two older children is supported by a preponderance of the evidence (see Matter of Rakeem M., 139 AD3d at 623). Such conclusions support a finding of derivative neglect even though the younger children were not yet of school age (see Matter of Danny R., 60 AD3d 450 [1st Dept 2009]; Matter of Yahmir G. [Tanisha N.], 48 Misc 3d 1224 [A], 2015 NY Slip Op 51255[U], *4 [Fam Ct, Bronx County 2015]).
All concur except Acosta, P.J.
and Manzanet-Daniels, J. who dissent in part in a memorandum
by Acosta, P.J. as follows:




ACOSTA, P.J. (dissenting in part)


Pursuant to Family Court Act § 1012(f)(i)(A), a parent may be culpable of neglect when he or she fails to "exercise a minimum degree of care" in supplying the child with, among other things, adequate food, clothing, shelter or education in accordance with the provisions of the Education Law, article 65, part 1, resulting in impairment or risk of impairment to the child's "physical, mental or emotional condition." There must be proof of a causal connection between the alleged parental misconduct and the child's impairment or threatened impairment (Nicholson v Scoppetta, 3 NY3d 357, 368-369 [2004]). The burden of proving allegations of neglect by a preponderance of the evidence is on petitioner (Nicholson v Scoppetta, 3 NY3d at 368).
On the facts of this case, I agree with the majority that the Family Court erred in finding neglect and derivative neglect for failure of the mother to provide adequate food, clothing and shelter. In my opinion, however, the evidence also fails to support a finding that the two older children, David and Asa,[FN1] were educationally neglected. Family Court Act § 1012(f) requires that the parent comply with the Education Law's legal mandate that the child "attend an educational institution within the school district or receive substantially equivalent instruction elsewhere" (Matter of Jeremy VV., 202 AD2d 738, 740 [3d Dept 1994]). Further, to establish [*3]educational neglect, there must be a showing of parental misconduct, harm or potential harm to the child, and "a causal connection between the conduct of the parent and the alleged harm to the child" (Matter of Christopher UU., 24 AD3d 1129, 1131 [3d Dept 2005] [internal quotation marks omitted]).
Here, the mother attempted to follow DOE regulations by submitting Letters of Intent indicating her intention to homeschool David and Asa, but she did not receive responses from the DOE, which were necessary to proceed with the process of submitting her Individual Home Instruction Plans (IHIPs) for approval and registering the children as being homeschooled. In fact, she provided copies of the letters she sent in 2016, and the DOE confirmed receipt of those letters. She was unable to produce copies of previous letter because they had been stolen.
In any event, even accepting that the mother failed to comply with DOE regulations, there was no showing that the children suffered impairment or the risk of impairment by not being enrolled in an educational institution or formally registered as being homeschooled. While unrebutted evidence of excessive absences from school over a prolonged period of time has in some instances been found sufficient to establish educational neglect (see e.g. Matter of Fatima A., 276 AD2d 791 [2d Dept 2000] [child absent 101 of 166 school days]; Matter of Jovann B., 153 AD2d 858 [2d Dept 1989] [child missed approximately one third of school days over two school years]), the evidence here does not show excessive school absences, as the mother credibly testified that the children were being homeschooled approximately five hours a day and were in compliance with the DOE's attendance requirements.
Assuming for the sake of argument that the mother's conduct created an inference that the children were being educationally harmed, that inference was rebutted (see e.g. Matter of Giancarlo P., 306 AD2d 28, 28 [1st Dept 2003] ["child's prolonged, unexcused absence from school does not, ipso facto, establish either the parental misconduct or the harm or potential harm to the child necessary to a finding of neglect"]; Matter of Jamol F., 24 Misc 3d 772, 781 [Fam Ct, Kings County 2009] ["(p)roof of a prima facie case (of educational neglect) does not create a conclusive presumption of parental culpability or risk of impairment. It simply creates a permissible inference"]). The mother, a college graduate, who had familiarized herself with IHIP standards, testified that she was providing the children with a well rounded education at home. She explained that she had developed a curriculum that was consistent with the DOE's homeschooling regulations. In addition to teaching the basic common core subjects, she provided the children with instruction in computer skills and programming, a subject with which she had some expertise. She also enrolled the children in online classes through Time4Learning and the Khan Academy, which, in addition to offering instruction on the common core curriculum, used state-of-the-art adaptive technology to create learning programs tailored to the student's particular needs and strengths.
The mother enriched the children's education by exposing them to New York's cultural institutions and by using the local community garden. In addition, David was interested in robots and had created his own blog about them, and David and Asa had a blog for Bible stories and drawings. Last, the mother provided for periods of free play at home and in parks. Even the court noted that the mother's dedication to providing the children with a good education was admirable.
The majority unfairly characterizes this testimony as "self serving." But it goes without saying that any parent who testifies on his or her own behalf against charges of neglect is doing so to serve his or her own interest. In any event, I do not see any indication in the record that the mother was lying. This characterization also misses the point. The issue is whether the mother engaged in misconduct (i.e., not properly following the New York State homeschooling requirements) that caused harm to David and Asa.
In this regard, it should be noted that there was no educational testing conducted by petitioner that established that the children were not performing at age-appropriate levels. The mother, on the other hand, tested the children periodically, and she testified that they were meeting, if not exceeding, the DOE's standards. She even had David read from a textbook to Child Protective Specialist Yendry Bonilla to demonstrate the advanced reading skills he had [*4]acquired through his schooling at home. Indeed, when Bonilla visited the apartment in December 2015, she noted that there were books and educational posters on the wall. While Police Officer Michaels testified to seeing no books or educational materials in the home, she was in the apartment on only one brief occasion under somewhat chaotic circumstances. And, as noted above, the burden is on petitioner to prove allegations of neglect by a preponderance of the evidence (Family Court Act § 1046(b)(i)). There is no proof that the oldest children were harmed (or at risk of being harmed) by the mother's homeschooling. This finding was based on pure speculation.
I also disagree with the court's finding that the mother was not qualified to teach. Indeed, New York State does not require teaching credentials for parents providing home instruction (https://www.homeschoolfacts.com/state-laws/new-york-homeschool-state-laws.html).
I also do not agree that the younger children were derivatively neglected. At most, the evidence supports a finding that the mother did not follow the correct procedure with the BOE that would have allowed her to homeschool David and Asa. It did not, however, evince defective parental judgment in not understanding the importance of providing her children with a solid education. Indeed, the mother's lapse in judgment in not appreciating the strict rules that must be complied with is a far cry from the type of defective parental judgment that would support a finding of derivative neglect of children that were not even of school age at the time of the proceedings.
I would therefore reverse the Family Court's findings to the contrary and dismiss the petition.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: JUNE 6, 2019
CLERK



Footnotes

Footnote 1:During the 2015-2016 school year, David was nine and Asa seven years old.