OPINION OF THE COURT
George R. Davis, J.
The respondents, Edwin Falk and Pamela Falk, have been charged with educational neglect of their child, Raymond, born October 3, 1974 because, it is claimed, they have not supplied him with education in accordance with the provisions of part 1 of article 65 of the Education Law. (Family Ct Act, § 1012, subd [f], par [i], cl [A].) The parents reside in the community of Lyons Falls, Lewis County, New York, and the child would normally attend during the school year 1980-1981 the first grade of the elementary school located in the Hamlet of Glenfield, Lewis County, under the jurisdiction of the South Lewis Central School District. The child has not attended school since January 5, 1981 when he was withdrawn by his parents in favor of home instruction as sole student of his mother at the parental domicile.
A fact-finding hearing was held and at which time testimony was taken from the respondent parents; John Robertson, Ph. D., a family friend and a professor of education at New York University; William Alexander, Ph. D., petitioner and Supervisor of Elementary Education for the South Lewis Central School District; and Ann *105 Anderson, B.A., M. S., for 15 years a primary teacher, currently one of the two teachers of first grade at the Glenfield Elementary School.
It appears that the seeds of the decision to withdraw Raymond from the public educational system were planted even as the child finished kindergarten and before he entered the first grade. The parents, believing in a natural, self-sufficient, family-oriented lifestyle, had doubts about certain changes they noticed in their child’s attitudes and experiences garnered at kindergarten. He was transported to and from school by bus, which at times was a bit trying. The child carried his own lunch, and inasmuch as the parents subscribed to a vegetarian diet there was a degree of conflict with the school lunch program and especially the furnishing of pasteurized milk to the children which the parents felt caused their son a slight digestive disorder and ear infection. The parents were philosophically opposed to the group concept of education and looked upon the routines and regulations surrounding a public school experience with considerable skepticism. The parents also felt that after their son returned from school stimulated with the experience and the give and take with the other children on the bus ride, it took an hour or so for the child to “unwind” and made it difficult for the family to communicate with each other and take up activities at their home.
Feeling as they did and in November of 1980 the parents kept Raymond out of school for a week, but following an unfortunate meeting with the representative of the County Probation Department the child was returned to school for about five weeks until he was again withdrawn on January 5. Surprisingly, according to the mother, the decision to change was the boy’s. “He decided he would like to try learning at home, since we gave him the choice”.
Meanwhile, the respondent parents had reviewed the requirements for home instruction contained in the Education Law, pertinent court decisions, had consulted with counsel and had discussed the problem with representatives of the South Lewis Central School Board of Education. The respondents commenced upon a course of home instruction by accumulating a number of cast-off and obsolete elementary school books, as well as text and work *106 books currently used in the school system. They gained access to film instructional aids. The mother, a high school graduate and with one year of training in business and accounting at Herkimer County Community College, undertook to be the boy’s teacher. The respondent father also plays a part in the home education program as general overseer and assists in his son’s educational experiences. The father, following graduation from high school, attended a technical institute in New Jersey and is a skilled electronics technician who now operates a repair shop about 30 hours a week in the Hamlet of Greig in this county. Mr. Falk moved to this community after holding a demanding job in his field in other parts of the country. He wanted to live in a rural Adirondack setting and to have more time to spend with his wife and child. Mr. Falk often accompanies mother teacher and child on field trips for the mutual exploration of the world about them and instructs or discusses with his son subjects in the area of physical or general science.
Pertinent provisions of article 65 of the New York State Education Law are as follows:
Section 3205 (subd 1, par a): “In each school district of the state, each minor from six to sixteen years of age shall attend upon full time instruction.”
Subdivision 1 of section 3204: “Place of instruction. A minor required to attend upon instruction by the provisions of part one of this article may attend at a public school or elsewhere.”
Subdivision 2 of section 3204: “Quality and language of instruction; text-books. Instruction may be given only by a competent teacher * * * Instruction given to a minor elsewhere than at a public school shall be at least substantially equivalent to the instruction given to minors of like age and attainments at the public schools of the city or district where the minor resides.”
Section 3204 (subd 3, par a, cl [1]): “The course of study for the first eight years of full time public day schools shall provide for instruction in at least the twelve common school branches of arithmetic, reading, spelling, writing, the English language, geography, United States history, *107 civics, hygiene, physical training, the history of New York state and science.”
Subdivision 2 of section 3210: “Attendance elsewhere than at a public school, a. Hours of attendance. If a minor included by the provisions of part one of this article attends upon instruction elsewhere than at a public school, he shall attend for at least as many hours, and within the hours specified therefor.”
The first school in New York State is said to have been established by the Dutch school master Adam Roelanster in 1638 in lower Manhattan and a historical plaque near the site notes “according to custom at that time the school was held in the home of the school master”. Even though a public or common school system was first established in this State by chapter 242 of the Laws of 1812, it was not until the enactment of chapter 421 of the Laws of 1874 that the Legislature provided for compulsory education: “section 1: *** And every parent, guardian or other person having control and charge of any child between the ages of eight and fourteen years shall cause such child to attend some public or private day school at least fourteen weeks in each year, eight weeks at least of which attendance shall be consecutive, or to be instructed regularly at home at least fourteen weeks in each year in spelling, reading, writing, English grammar, geography, and arithmetic” (emphasis added).
It was by chapter 671 of the Laws of 1894 that the Legislature in an act to provide for the compulsory education of children (Education Law) for the first time created the concept of equivalent instruction. Every child required to attend school was to receive “at least the common school branches of reading, [etc.] *** or * * * equivalent instruction by a competent teacher elsewhere than at a school *** If any such child shall so attend upon instruction elsewhere than at a public school, such instruction shall be at least substantially equivalent to the instruction given to children of like age at the public school of the city or district in which such child resides” (L 1894, ch 671, §3; emphasis added).
Parents have the right to provide their children a basic education in a privately operated system (Wisconsin v *108 Yoder, 406 US 205, 213, citing Pierce v Society of Sisters, 268 US 510). This recognition of parental control and direction of their children’s education is extended to so-called home instruction. The court in construing the same provisions of the Education Law at issue here in People v Turner (277 App Div 317, 319-320) said “[t]here is no provision in the Education Law which prohibits instruction of children at home, nor is there any provision requiring certification of a parent by the Commissioner of Education before she may teach her children at home * * * The object of a compulsory education law is to see that children are not left in ignorance, that from some source they will receive instruction that will fit them for their place in society. Provided the instruction given is adequate and the sole purpose of nonattendance at school is not to evade the statute, instruction given to a child at home by its parent, who is competent to teach, should satisfy the requirements of the *** [Education [L]aw”. (See, also, Matter of Franz, 55 AD2d 424; Matter of Zorach v Clauson, 303 NY 161.)
In an introduction to “The Twelve Year Sentence” subtitled “Radical Views of Compulsory Schooling” papers prepared for an educational symposium (copyright 1974, Open Ct Pub Co., La Salle, 111), it is stated: “Compulsory schooling has come under increasing fire from the educationists themselves and from outside critics. From one end of the country to the other, the subject of schooling — whether it be busing, budgets, curricula, indoctrination, prayer, lunches, sex courses, tax sources — give rise to bitter and endless controversy *** To many who support compulsory schooling, the use of compulsion is necessary to bring up the young to respect and practice the virtues and customs of the society. To the critics of compulsory schooling, it is precisely this coercive intrusion of the collective into the life and mind of the individual that represents the most damnable feature of compulsory schooling.”
The ideal college is Mark Hopkins (1802-1887) on one end of a log and a student on the other, so said President James A. Garfield, his former student. This concept, we are told, encompasses an interest in self-education, close student-faculty relations, and moral as well as intellectual training.
*109 We need not be further concerned with general or philosophical approaches to education of children, our task is to determine whether respondents have afforded their son instruction substantially equivalent to other first graders at the Glenfield Elementary School. We are not now concerned with the probability or improbability of respondents’ capacity to continue home instruction for their son for an indefinite period of years. It may well be that the assignment of furnishing a substantially equivalent education to a child of more advanced years and in the grades to come would be insurmountable for these respondents or almost anyone else in a similar situation. As we view the procedures required by the Family Court Act, the onus of demonstrating that the home instruction is substantially equivalent falls on the respondents and it is conceivable, if not probable, that a proceeding similar to the instant one could be commenced during any particular year or semester of the school years ahead, should respondents continue their present plan.
The petitioning school authority, the establishment as it were, suggests that the respondents are not within the statute because there has been a failure to show that they have a consistent systematic approach to the subject matter required to be covered, that there is an inadequate lesson plan or curriculum, that respondents have little, if any, sequential concept, and there is a failure to examine or test or to evaluate and compare the child’s progress or lack thereof with others in a like situation.
An additional feature of this type of controversy is the thought that home instruction would leave a great deal to be desired in the area of social development derived from group education in a public school environment. This proposition has been countered by respondents by inviting other children in the neighborhood to come to their home when they were showing filmstrips or movies and to socialize with their son on other occasions. The legalistic response to such an argument would be that the Education Law requires no courses of instruction designed to enhance a student’s learning experience by the free association with other children in the classroom, on the athletic field or on the bus. We are it seems, limited to the narrow question of *110 whether respondents have furnished a substantially equivalent instruction in 12 specific subject areas as that afforded in the public schools. That the South Lewis Central School system consists of numerous buildings well equipped and maintained, fine teachers, coaches, aide's and assistants, an able, progressive administration and an alert and conscious school board, is of little moment in the present controversy.
The words “substantially equivalent” should be given their common and ordinary meaning, which is equal in worth or value. Substantially equivalent would mean meeting the essential and significant elements and correctly covering the subject matter for the various subjects required to be taught in public, private and home schools (see Knox v O’Brien, 7 NJ Super 608).
Long-time supporters of public education would undoubtedly feel that the established schools could do the job better and there is an inherent difference and inability to afford substantially equivalent instruction in the home as contrasted with the classroom. Considering the large public expenditures spent on public education, the inability of most parents to provide home instruction and the lack of proof to indicate that home instruction would result in a better product, there is considerable that may be said in opposition to home teaching. If the professional educator looks with disfavor upon a home school staffed by noncertified teachers, then it is up to the legislators to tighten up the standards for home instruction. It would seem that there is no constitutional barrier to a requirement that teachers be qualified (certified) instead of “competent” (uncertified or without formal training) (see T.A.F. v Duval County, 273 So 2d 15 [Fla]; what constitutes a private, parochial, or denominational school within statute making attendance at such school a compliance with compulsory school attendance law, Ann., 65 ALR3d 1222).
Be that as it may, if we consider the experience of respondents’ child Raymond from January 5,1981 down to June 19,1981, the last day of school, we must conclude that he received the minimal education required by law. This is so because his parents saw to it that he studied in a relaxed and informal manner for the periods of time required by *111 law and covered the same subject matter as presented to first graders in the South Lewis School system. His mother had a lesson plan and kept what she called a diary or journal of the educational experience. The family accumulated a children’s library of some 200 books, many of which the child had read. Writing was taught and the boy was encouraged to compose letters to friends and relatives and to relate occurrences. His studies included spelling, use of the English language and other required subjects. Arithmetic was taught by the counting of money and the working with combinations of numbers. The parents utilized grade mathematic workbooks and other training aids such as flash cards and films. The parents took the student on field trips to a farm pond, to the neighbors’ sap house, to the Sheriff’s office, to a local historical site, to an art museum, and other places of interest. They planted seeds to demonstrate how plants grew, made weather charts and spent time listening to and singing folk and blue grass music. Hygiene was taught through the preservation of health through natural food, fresh air, sunshine and exercise. In short, the 12 required subjects were covered and as in the public school greater emphasis was put on the three R’s.
Respondent’s son seems to be a bright boy, and although there is nothing in the record to directly support such a conclusion, indications are that Raymond would test or compare favorably with any of the children in attendance at the first grade in Glenfield. As noted, the weakness in respondents’ home instruction is the parents’ inexperience and lack of professional approach in building or planning for “sequential work” as provided for in the Regulations of the Commissioner of Education (8 NYCRR 100.1), “The curriculum”. In order to successfully teach in grades 1 through 8, one should have an understanding of the subject matter and courses that would be presented to a student in grades 9 through 12. Very likely, respondents’ plan for home instruction up to and including the more advance grades is doomed to failure. We cannot visualize these caring and concerned parents teaching properly and successfully the intricacies of say Boyle’s Law, the mysteries of algebra and geometry or the nuances of the Missouri Compromise.
*112 One further facet of this controversy, of particular concern to the Law Guardian, is what may be perceived as a polarization of the attitudes of the respective parties. The school authorities put great emphasis on lesson plans, trained teachers, testing and a general suspicion of alternative education in the home. At the same time, respondents have demonstrated a certain amount of hostility towards the school authorities. The Law Guardian suggests that if the child is to be educated at home, it should be with the active participation and co-operation of the petitioner in supplying professional advice and technical assistance together with continuing evaluation of the program carried on there. On respondents’ part it is recommended that they seek out and accept guidance by petitioner’s representatives.
This may be easier said than done, because as far as we are able to determine, there is no obligation on the part of the school authorities to assist in a method of alternative education for Raymond they basically oppose. Absent a showing of imminent danger or harm to a child by parental insistence upon a particular method or course of instruction, the wishes of parents in matters of moral or religious precepts and training and the providing of an elementary education is paramount and if the education furnished meets the minimum required by article 65 of the Education Law of this State, there is little, if anything, that either parent or school may be required to do to further insure a quality education for Raymond.
In summary, we conclude that respondents have met the burden of proof that they are providing instruction for the child, Raymond, during the school year 1980-1981 by a competent teacher for the year and grade involved, substantially equivalent to instruction given to other children of like age and attainments at the public schools of the district where the minor resides, and accordingly, the petition must be dismissed.