**In re Stanley MONNIG, Susanne Monnig, and Tammy Monnig, Juveniles.**

**No. WD 32420.**

Missouri Court of Appeals,
Western District.

Aug. 24, 1982.

Daniel S. Ochstein, Holts Summit, for Aaron Monnig and Mildred Monnig, Parents.

D. Eric Sowers, Pros. Atty., for Chariton County, Keytesville, for Chariton County Juvenile Officer.

Before SHANGLER, P. J., and PRITCHARD and DIXON, JJ.

SHANGLER, Presiding Judge.

The parents Monnig appeal an adjudication of the juvenile court that three minor children were in need of care and treatment because of the neglect of the parents Mon-

nig to provide the education required by law. The order decreed the children wards of the court, placed custody with the juvenile officer, directed that the children be enrolled in the public school but retained placement in the parents so long as the three children attend public school. The parents understood the proceeding in the juvenile court as a criminal prosecution against them, refused to give testimony, and now contend the adjudication was void for want of *proof beyond a reasonable doubt.*

The proceeding was brought by a petition in the juvenile court in the terms of § 211.091, RSMo 1978 and Rule 128.10. The petition was brought by the juvenile officer in the interest of Stanley, Susanne and Tammy, children of the Monnigs and invoked the jurisdiction of the court by the recitation that the children

> are not attending a day school, either public, private or parochial, and as a result may be in violation of the compulsory attendance statute of the State of Missouri, to-wit: Statute [sic] 167.031, RSMo.

The terms of § 167.031 enjoin upon every parent, guardian or other person in charge, custody or control of a child between the ages of seven and sixteen years to cause the infant *to attend regularly some day school, public, private, parochial or parish ... or shall provide the child at home with regular daily instructions during the usual school hours which shall, in the judgment of a court of competent jurisdiction, be at least substantially equivalent to the instruction given children of like age in the day schools in the locality in which the child resides.* The parent [among the others in charge of the child] is liable under § 167.061 for criminal penalty for violation of the compulsory attendance law. The petition in the juvenile court against the parents Monnig neither alleges nor adjudicates any criminal liability under § 167.061—nor could it—but merely cites the noncompliance with the compulsory school attendance § 167.031 to invoke the exclusive jurisdiction accorded

the juvenile court by § 211.031 as to a child in need of care and treatment because of the neglect of the parent "to provide [the] proper ... education ... required by law."

■ The parental neglect to provide the child with the educational need not only suffices to divest temporary custody [§ 211.131.2] but also, if prolonged, suffices to terminate the parental right to the child [§ 211.447.2(2)(a)b, (b)]. In either event, the intervention of the state for the protection of the child in default of the duty of the natural parent [*Prince v. Massachusetts,* 321 U.S. 158, 166, 64 S.Ct. 438, 442, 88 L.Ed. 645 (1944)]—and not as the sovereign executor of the criminal law against the parent for violation of compulsory school attendance § 167.061 [*State v. Pilkinton,* 310 S.W.2d 304 (Mo.App.1958)]. In the one case, the jurisdiction of the court is engaged by a petition in the interest of the child served upon the parent as a necessary party in interest [§ 211.101 and Rule 115.01] and the proof of the petition is by clear and convincing evidence [Rule 117.05(b)]. In the other case, the jurisdiction of the court to render a sanction of conviction against the parent is engaged, as in all criminal judgments, by formal accusation [Rules 21.-01 and 22.01] and proof of the offense by evidence beyond a reasonable doubt [*State v. Davis,* 598 S.W.2d 189, 191[1–4] (Mo.App. 1980)].

■ The petition adjudicated against the Monnigs was for the neglect of the parental duty to educate the children—a subject matter within the exclusive jurisdiction of the juvenile court under § 211.031.1(1)(a). The rules of evidence applicable to such a proceeding are those which govern cases in equity. Rule 117.04; *State ex rel. R. L. W. v. Billings,* 451 S.W.2d 125, 126[2] (Mo. banc 1970). The standard which appertains to prove the facts of such a petition is evidence clear and convincing, and not, as the parents Monnig contend, beyond a reasonable doubt. Rules 117.04 and 117.05(b).

The parents Monnig contend the cognate argument that the evidence failed to prove

all the elements of the cause of action under § 167.031—that is, that the parents did not cause the children to a regular attendance at some school or alternatively to provide them with daily home instructions during the usual school hours of a quality [in the judgment of a court of competent jurisdiction] equivalent to school instructions.[1] They argue in express effect that the adjudication lacked due process because they were entitled to the presumption of innocence which stands until every element of the proof is met beyond a reasonable doubt. That contention iterates the rationales of *State v. Cheney*, 305 S.W.2d 892 (Mo.App. 1957), *State v. Pilkinton,* 310 S.W.2d 304 (Mo.App.1958) and *State v. Davis,* 598 S.W.2d 189 (Mo.App.1980) that in a *criminal prosecution* against the parents for violation of § 167.031, the information must allege and the evidence must prove that the accused parents not only failed to enroll the children in a school but also failed to provide an equivalent home instruction as essential elements of the integral *offense.* That contention merely renews the misconception that the proceeding was a criminal prosecution under the compulsory school attendance law. The adjudication [as we note] rather was on a petition in the juvenile court under § 211.031—a proceeding without criminal consequences—which alleged the *neglect* of the parents to educate the children as required by § 167.031.

The question nevertheless persists as to the nature of the proof necessary to sustain a petition for *neglect* of the parental duty to educate the children under § 167.031. The argument of the Monnigs, transposed from a criminal prosecution to a proceeding

under § 211.031, contends that where the juvenile court acts to assert jurisdiction in the interest of the children because of the neglect of the parents to educate them according to the strictures of § 167.031 the burden of proof encompasses [as in a criminal prosecution, albeit by the lesser clear and convincing standard], not only that the children were not enrolled in a formal school, but also that the parents failed to provide home instruction equivalent to that of the day schools in the locale.

The children were not enrolled in a public or other formal school—that much was stipulated evidence. The home study was not adjudged equivalent to school instruction by a court of competent jurisdiction—that also was stipulated. There was other evidence in support of the petition. The local school principal testified that the three Monnig children were not matriculated in the district. They enrolled but then discontinued attendance. That witness also described the normal curriculum for each of the children according to grade. The principal had no inkling what study program the Monnigs employed at home or [by ready inference] whether that activity was equivalent to formal school instruction. In an initiative to elaborate that proof, the court summoned first Mr. Monnig and then Mrs. Monnig to the witness stand. The counsel for the parents [insistent that the proceeding was a criminal prosecution] intervened, advised the parents to refuse testimony, and moved for a judgment of acquittal. The counsel asserted the authority of *Cheney, Pilkinton* and *Davis,* supra, [all criminal prosecutions] that § 167.031 requires the proponent to prove *both* the failure of the parent to

1. 167.031. School attendance compulsory—who may be excused

Every parent, guardian or other person in this state having charge, control or custody of a child between the ages of seven and sixteen years shall cause the child to attend regularly some day school, public, private, parochial or parish, not less than the entire school term of the school which the child attends or shall provide the child at home with regular daily instructions during the

usual school hours which shall, in the judgment of a court of competent jurisdiction, be at least substantially equivalent to the instruction given children of like age in the day schools in the locality in which the child resides . . . .

Violation of § 167.031 is constituted a misdemeanor by § 167.061 punishable by a fine of not less than ten or more than twenty-five dollars or by imprisonment in the county jail for not less than two nor more than ten days.

enroll the child in a school and the failure of an equivalent course of study at home. The motion for a judgment of acquittal was premised on the absence of any evidence of the nature and quality of the Monnig home study instruction. The court did not insist upon the testimony of the parents Monnig, but instead received the testimony of the juvenile officer. When the truancy of the Monnig children was reported, he visited the home. The mother told him that the children were in the process of enrollment in the Christian Liberty Academy for instruction by correspondence. The children were tested for grade placement and the Monnigs then awaited delivery of the educational materials. The text books then arrived, and the Monnigs notified the juvenile officer. He perused the texts, consulted with Mrs. Monnig as to the instruction schedule and the subjects instructed—which the mother herself conducted as teacher. The daily regimen consisted of Prayer, Pledge to the Flag, Scripture, Mathematics, Reading, Spelling, Science, Bible, Geography, Physical Education, Economics—among several others. Neither the juvenile officer, nor any other witness, undertook to assess an equivalence or disparity between the home study course and the instruction offered in the schools of the locale.

The court thereupon overruled the motion for a judgment of acquittal and adjudged the three children in need of the care and treatment of the juvenile court under § 211.031 for failure of the parents to educate the children as required by law. The custody was placed with the juvenile officer, but the children were allowed to remain with the parents at home "as long as they are enrolled and attend a public school."

The validity of the standard of proof a state imposes upon a given judicial proceeding depends upon whether the quantum satisfies the constitutional minimum of fundamental fairness. *Addington v. Texas,* 441 U.S. 418, 431, 99 S.Ct. 1804, 1812, 60 L.Ed.2d 323 (1979). The least degree of proof due

process tolerates depends upon the gravity of the private as counterpoised against the public interests affected and reflects the communal judgment as to how the risk of error shall be distributed between the litigants. *Santosky v. Kramer,* —— U.S. ——, 102 S.Ct. 1388, 1395[5], 71 L.Ed.2d 599 (1982). The function of the standard of proof as embodied in due process, therefore, is to instruct the factfinder as to "the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication." *In re Winship,* 397 U.S. 358, 370, 90 S.Ct. 1068, 1076, 25 L.Ed.2d 368 (1970). Thus, the standard of proof not only allocates the risk of error between the litigants, but also speaks the relative importance of the ultimate decision. In a criminal proceeding, the transcendant interest of an accused to personal liberty incurs the demand of due process that to minimize the risk of error of the conviction of an innocent person, the other party prove guilt of the accused beyond a reasonable doubt. *Speiser v. Randall,* 357 U.S. 513, 525, 78 S.Ct. 1332, 1341, 2 L.Ed.2d 1460 (1958). In the usual civil litigation only private interests are involved, the societal concern in the outcome is minimal, the litigants share the risk of error almost equally—and the factfinder comes to decision on a preponderance of the evidence. *Addington v. Texas,* supra, l. c. 441 U.S. at 423, 99 S.Ct. at 1807. In that species of civil cases which involves more than mere loss of damages, however, where official action impinges on fundamental right or liberty [such as termination of parental rights], due process lessens the risk of erroneous decision by a clear and convincing standard of proof. *Santosky v. Kramer,* supra, l. c. 102 S.Ct. at 1397 et seq. [9–14]; *Addington v. Texas,* supra, l. c. 441 U.S. at 425, 99 S.Ct. at 1808 et seq.

The law of Missouri conforms to these standards of due process. Its adjudications have for some time declared that the right of natural parents to rear their own children is a liberty interest, a fundamental right government may not infringe except

by proof both clear and convincing [*Renfro v. Jackson County Juvenile Court,* 369 S.W.2d 616, 621[2–4] (Mo.App.1963); § 211.447.2(2); Rule 117.05(b)]—a discernment of process due only lately come to constitutional stature by the United States Supreme Court [*Santosky v. Kramer,* supra, l. c. 102 S.Ct. at 1402[14, 15]]. Our procedures acknowledge even more: that the process of a clear and convincing proof is due when governmental action disrupts the child-parent relationship by a proceeding which threatens only a temporary divestment of custody—as by the petition against the Monnigs for neglect of education. [Rule 117.05(b)]. That requirement of proof rests no doubt on the palpable reality that the adjudication of the parental neglect [to educate or to otherwise provide for the children] which empowers the juvenile court to assume jurisdiction over the children to the temporary exclusion of the parents [§ 211.181] constitutes prima facie evidence of permanent neglect [when the adjudicated condition of neglect perseveres more than a year] and so augurs a termination of the parental right altogether [§ 211.447.2(2)(h)b].

█ The petition asserts that the Monnig children are not in attendance in day school as required by § 167.031 and cites the parents for that neglect. The proponent of a neglect petition bears the burden to prove the constituents of the cause of action by evidence both clear and convincing. Rule 117.05(b). The statute which the juvenile authority invokes to exercise jurisdiction over the Monnig children requires a parent [or one in loco parentis] to cause a child between the ages of seven and sixteen years to a regular attendance in some day school *or* to provide the child with an equivalent regular home study. In a criminal prosecution of a parent for violation of § 167.031 each of the statutory components: the failure of the parent to cause the child to regular attendance at a day school *or* to provide an equivalent regular home instruction—is an essential element of the substantive offense which due process requires the prosecution to prove beyond a reasonable doubt. *State v. Davis,* 598 S.W.2d 189, 191[1–4] (Mo.App.1980). In a *civil* action on the statute the *risk of nonpersuasion* logically also encompasses the same elements, albeit by a clear and convincing quantum. The burden to prove every element of a cause of action rests on the proponent. There is a rule of necessity, however, which tempers that burden of persuasion [*Schneider v. Maney,* 242 Mo. 36, 145 S.W. 823, 824[6] (1912)]:

> Where the party who has not the general burden of proof possesses positive and complete knowledge concerning the existence of facts which the party having that burden is called upon to negative, or where for any reason the evidence to prove a fact is chiefly, if not entirely, within the control of the adverse party . . . the burden of evidence is on the party who knows, or has special opportunity for knowing, the fact . . . although he is obligated to go no farther than necessity requires.

The default of the adversary to go forward with that evidence gives risè to an inference that the proof, if adduced, would not be favorable. *Pasternak v. Mashak,* 428 S.W.2d 565, 568[2, 3] (Mo.1967); 29 Am. Jur.2d, *Evidence* § 131 (1967). The effect of the rule is to lessen the initial quantum of evidence the party without access to the information is required to adduce. 1 Jones on Evidence § 5:9 (6th ed. 1972).

The first component of the statute § 167.031 as the basis of the parental neglect allegation of the juvenile court petition—that the Monnigs did not "cause the child[ren] to attend regularly some day school, public, private, parochial or parish" was a fact proven by the stipulation of the parties and otherwise by the testimony of the school principal. The second component of the statute—that the parents Monnig did not "provide the child at home with regular daily instructions during the usual school hours which shall, in the judgment of a

court of competent jurisdiction, be at least substantially equivalent to the instruction given children of like age in the day schools in the locality"—was not. The nature of that proof calls upon the proponent both to negative a fact and otherwise to adduce evidence virtually exclusively within the control of the Monnigs. The juvenile officer [proponent of the petition to assume jurisdiction over the Monnig children for the neglect of the parents to educate under § 167.031] argues the effect of the rule of procedure expounded in *Schneider v. Maney,* supra, which imposes on the suitor with special opportunity to know the obligation to proceed with the proof of that fact or risk the adverse inference.[2] The parents Monnig contend, on the other hand, that the rule in *Cheney, Pilkinton* and *Davis* —that the prosecution bears the burden of the evidence as well as the ultimate persuasion on the two statutory components—appertains to the juvenile court petition and that the failure of the juvenile officer to adduce evidence that the Monnig home instruction was not equivalent to school instruction in the locale.

These contentions pose a conundrum. The juvenile court attempted to aid the proof of the petition by a summons to the witness stand to each of the parents Monnig, in turn. They refused testimony on the advice of counsel who imagined the proceeding a criminal prosecution. A party defendant in a criminal action, of course, may not be compelled to take the witness stand. A party defendant[3] in a civil action, however, stands exactly as any other witness and may not refuse the stand and must testify [*Wells v. Goforth,* 443 S.W.2d 155, 159[6] (Mo. banc 1969)] unless the witness incants that the answer would tend to self-incrimination. *State ex rel. Pulliam v. Swink,* 514 S.W.2d 559, 560[1] (Mo. banc 1974). A parent who responds to a citation in the juvenile court for the neglect to educate a child under § 167.031 by evidence of home instruction at least substantially equivalent to the instruction in the day schools of the locale courts criminal prosecution if that proof falls short. To cast on the parent the burden of the evidence on that issue merely because the information almost certainly is best known to that party, therefore, infringes the constitutional right against self-incrimination. To cast the burden of that evidence—best known to

**2.** The trial was confounded by the misconception that the petition constituted a criminal prosecution against the parents Monnig, thus the argument of the juvenile officer—respondent on appeal—answers in kind the misdirected points on appeal, all couched in terms of the original misconception. The appellants Monnig, as we duly note, argue the rationale of *Cheney, Pilkinton,* and *Davis* that the burden to prove the negative [that the Monnig home instruction was not equivalent to the formal day school instruction] rests on the prosecution and so appertains to this action also. The juvenile officer, on the other hand, with awareness that the petition was on a civil action, cites the dissent of Prewitt, J. in *Davis* that the onus to proceed on the proof of a negative averment peculiarly within the knowledge of the adverse party [the equivalence of the home study to the school study] is on the adverse party—there a criminal defendant under §§ 167.031 and 167.-061. The juvenile officer, *a fortiori,* finds the application of that rule of necessity all the more cogent in the civil proceeding against the Monnigs. [We note that the rationale Prewitt, J. expounds in the *Davis* dissent is more often than not the rule of application in the decided cases. See, e.g., *State v. Moorhead,* 308

N.W.2d 60 (Iowa 1981); *State v. Vaughn,* 44 N.J. 142, 207 A.2d 537 (1965); *In re Falk,* 110 Misc.2d 104, 441 N.Y.S.2d 785 (1981)].

**3.** The principles of procedural due process require that a parent in custody of a child over whom the juvenile court undertakes to exercise jurisdiction for parental neglect under § 211.-031 is entitled to timely notice in advance of hearing of the specific issues the parents must meet. *In the Matter of Gault,* 387 U.S. 1, 33, 87 S.Ct. 1428, 1446, 18 L.Ed.2d 527 (1967); *In re Trapp,* 593 S.W.2d 193, 198[2, 3] (Mo. banc 1980). Our juvenile court procedures, conformably to the constitutional requirement, prescribe that a parent in actual custody of a juvenile be served personally with a summons and a copy of the neglect petition. Rules 115.-01 and 115.02. A parent in interest so served becomes a party to the proceeding. *In re Trapp,* supra, l.c. 198[2, 3]. Whether as a party or merely a witness, nevertheless, a parent may be compelled to take the oath to give testimony at the call of the other party or of the judge [Rule 115.07] unless, of course, the protection of the Fifth Amendment is invoked.

the adverse party—on the juvenile authority, on the other hand, extracts a more difficult proof than the law usually expects.

The question involves only the burden of persuasion on an element of the cause of action and not the ultimate risk of nonpersuasion on the integral cause of action. Our rules of procedure [consonant with the due process declarations of the United States Supreme Court] impose on the juvenile authority the burden to prove the neglect of the parent by clear and convincing evidence. The allocation of the onus of the evidence on an issue, although not a formal function of due process, nevertheless also involves a balance of interests and a judgment of fairness. The interest which the parent poses against the imposition of the burden to proceed with the evidence on the issue of the equivalence of the home instruction with the day school instruction is not only that such a proof imperils the right of a parent against self-incrimination but also disparages the fundamental stake of a parent in the educational nurture of a child—even in the form of home instruction. *Wisconsin v. Yoder,* 406 U.S. 205, 232, 92 S.Ct. 1526, 1541, 32 L.Ed.2d 15 (1972); Home Education in America: Parental Rights Reasserted, 49 U.M.K.C.L.Rev. 191 (1981). The public policy in favor of compulsory education § 167.031 expresses, on the other hand, reflects the broader desideratum of the organic law [Mo.Const. Art. IX, § 1(a) (adopted August 3, 1976)] that: "A general diffusion of knowledge and intelligence [is] essential to the preservation of the rights and liberties of the people." These provisions for free public and compulsory education [or a private and equivalent alternative] constitute the very foundation of good citizenship and rank at the very apex of the function of a state. [*Ambach v. Norwick,* 441 U.S. 68, 77, 99 S.Ct. 1589, 1594, 60 L.Ed.2d 49 (1979)].

■ We determine that on balance fairness prompts that the governmental authority, the juvenile court, bear the burden of the entire evidence on a cause of action for the neglect of a parent to educate under § 167.031. The interest of a state in the compulsory education of its children is hardly more cogent than the stake of parents in the inculcation of personal and religious values in their own offspring. *Wisconsin v. Yoder,* supra, l. c. 406 U.S. at 232, 92 S.Ct. at 1541; *Pierce v. Society of the Sisters of the Holy Names,* 268 U.S. 510, 534, 45 S.Ct. 571, 573, 69 L.Ed. 1070 (1925). In the vindication of that interest, a state is not unduly hampered by a procedure which requires that—in a contest with the parents under § 167.031—the state agency prove that the course of instruction at home is not substantially equivalent to that of the day schools of the locale. To cast that initiative of evidence on the parents unfairly exposes them to the risk of criminal prosecution should their suppositions of the adequacy of the home curriculum be mistaken, however in good faith. The juvenile authority has access to the subpoena power to compel the parents as witnesses, as does the court. Rule 115.07. The parents may refuse to give testimony to avoid self-incrimination, but a claim of privilege gives rise to the inference that the testimony would have been unfavorable. *Harwell v. Harwell,* 355 S.W.2d 137, 141[1] (Mo.App.1962); 8 Wigmore, *Evidence* § 2272(1)(e) (McNaughton rev. 1961); 98 C.J.S. *Witnesses* § 455.

■ The court adjudicated that the parents Monnig neglected to educate the children under § 167.031, albeit there was no evidence that the home instruction was not substantially equivalent to day school study. The juvenile officer who attended the home study session and examined the texts was not an educator and made no attempt to evaluate the regimen. The parents Monnig, called as witnesses, refused to respond on the assumption that they were under criminal accusation. The decree of neglect rests on an implicit misconception: that the burden of the evidence of home instruction equivalence rested on the parents. The initiative to wrest that proof from the Monnigs was thwarted by another misconcep-

tion: that the proceeding was a criminal prosecution.

We reverse and remand the cause to the juvenile court for a new trial. On the retrial the juvenile court is entitled to the witness of the parents, and the Monnigs are bound to respond—unless, of course, they invoke the protection against self-incrimination.

All concur.