In the Interest of A.L.W., L.R.W., A.M.W. and H.A.K.

Alan M. GREMLI, Juvenile Officer, Respondent,

v.

C.J.W. (Natural Mother), Appellant.

No. 40722.

Missouri Court of Appeals, Western District.

May 16, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 27, 1989.

Application to Transfer Denied Aug. 1, 1989.

Steven Douglas Wolcott, Gladstone, for appellant.

Max Von Erdmannsdorf, Kansas City, for respondent.

Before FENNER, P.J., and SHANGLER and BERREY, JJ.

SHANGLER, Judge.

This review consolidates four appeals from orders of the Juvenile Division of the Circuit Court of Clay County which made the four minor daughters of C.J.W., the

natural mother, wards of the court and placed them into the custody of the respective natural fathers.

In response to emergency telephone advice from neighbors and the landlady, the police found the four children at their home unattended and unsupervised. That was on April 7, 1988. The investigation by the social workers discovered that the children had been left alone overnight by the mother and had been left unsupervised on other occasions. On those allegations, the juvenile officer brought a petition under § 211.031.1(1), RSMo 1986, on the ground that the parents or others legally responsible neglected or refused to provide proper support and care for the children. The court was asked to assume jurisdiction of the care and protection of each child.

At the hearing on the petitions there was evidence that on numerous other occasions the mother left the children with relatives or friends for extended periods who became unwilling custodians when the mother did not return as promised. There was other evidence that the mother accepted other children as a babysitter, but then left them with her own children and simply did not return, nor did anyone know where she could be reached. On some such occasions, other responsible adults stepped in to care for the children. An aunt had looked after the children on occasions when they had been left unattended, but had to discontinue that intervention because it interfered with her work and imperilled her employment. The grandmother of the four children [mother of the appellant] also testified that some months before, she fetched the children from the home of a neighbor where her daughter had left them the night before but had not returned by the next morning. She reprimanded the daughter about that and other like behavior. The evidence related incident after incident when the mother left the children unattended or in the charge of an adult with the promise to return within hours, but then she did not come back until days later.

The natural father of three of the girl children, a joint custodian under the decree of dissolution of marriage, testified that on 15 or 20 occasions the mother left the children with her boyfriend and did not return, so that he was called by the boyfriend to retrieve them. It was his testimony that the mother was an habitual user of drugs, and that she called on him urgently at odd hours for drug money. The maternal grandmother of the children reported to the juvenile authorities during the investigation of these petitions that the mother had admitted to her past cocaine use. Other witnesses also testified to her drug habits. It was the report of the guardian ad litem of the four children that, although the mother receives $800 per month in child support and the monthly cost for utilities, subsidized rent and food amounts to only $483 per month, the mother is constantly short of funds. That report disclosed also that the mother was given money by a friend for drug tests. At the hearing on the adjudication of the petitions in the juvenile court, the mother acknowledged that the order of joint custody of the dissolution court provides that she undertake a three month drug-counseling session. There was evidence that the order was not heeded.

An incident prior to the event of April 7, 1988, which prompted the petitions for the court to assume jurisdiction over the four children, gave a reason to Division of Family Services to suspect the need for protective services for the children. That entailed a regimen of regular contact with the family, counseling, and instruction in parenting. The mother, however, denied any such need and refused the services. It was her response that the pre-April 7, 1988 incident—when she left the children unattended for some time—was "a one-time thing." She knew "it was wrong [and] shouldn't have done it, [but] it would never happen again."

The appellant mother gave her explanation of why her children were found alone on April 7, 1988, and denied that she had been gone the entire previous night. She explained that she had returned that night, took the baby-sitter home, and then was called by Donna Abernathy, a pregnant woman with labor pains, took her to the hospital, and then was delayed by car trouble. The eldest child, an eleven-year-old,

reported, however, that someone called Sam had spent the night with them as baby-sitter. That is the same Sam the mother said she took home at 11 p.m. that night. The guardian ad litem reported, however, that the North Kansas City Hospital had no record of any treatment of Donna Abernathy on April 7, 1988, as asserted in the testimony of the mother.

The juvenile court found from this evidence—that is, that on at least one occasion prior to April 7, 1988, the children were left alone without adult supervision—that the allegations of the petitions were proven by the requisite quantum and assumed jurisdiction of the children under § 211.031.1(1). That phase of the adjudication done, the court received evidence as to the disposition to be entered. The order in each case made the child the ward of the juvenile court until the age of seventeen years or until jurisdiction was earlier terminated. The oldest child, eleven years of age, was placed in the custody of her natural father subject to the supervision of the Missouri Division of Family Services. The three younger children, ages six, six and four, were placed in the custody of their natural father subject to a like supervision. The mother was granted regular visitation also subject to supervision.

On this appeal the mother contends that the allegations of the petition were not proven by clear and convincing evidence, and hence the assumption of jurisdiction of the children was without lawful ground. The mother contends also that the order of disposition, which undertakes to remove the children from her custody but neglects to articulate the findings § 211.183, RSMo Supp.1988 requires, remains unformulated as a judgment.

The standard of proof in a hearing on a petition which alleges as a basis for jurisdiction that the child is in need of the care and protection of the juvenile court is evidence clear and convincing. Rule 117.05(b); *In the Interest of E.J.*, 741 S.W.2d 892, 894[3] (Mo.App.1987). The rules of evidence which appertain to such a proceeding are those which govern a case in equity. Rule 117.04; *State ex rel. R.L.W. v. Bill-*

*ings*, 451 S.W.2d 125, 126[2] (Mo. banc 1970). The mother acknowledges that there was substantial evidence, by proof clear and convincing, that on April 7, 1988, she left the four children alone. She does not acknowledge, however, that the action constituted neglect or want of care necessary to the well-being of the children. She alludes to evidence of recurrent car problems and to the absence at the hearing of the pregnant woman she transported to the hospital to disparage the adjudication of the assumption of jurisdiction. The version of the events of April 7th and of the evening before as rendered by the mother, however, was so at odds with all the other testimony—including that of her own child and even that of her own witness—that to refuse its probative efficacy [as the assumption of jurisdiction under the petition implicitly does] is simply to rest the adjudication on the other evidence. The question then remains whether that other evidence sufficed to sustain the proof the law requires.

The proponent of a neglect petition bears the burden to prove the constituents of the cause of action by clear and convincing evidence. Rule 117.05(b); *In Re Monnig*, 638 S.W.2d 782, 786[3] (Mo.App.1982). The course of neglect the petition cited against the mother was that on April 7, 1988, and "on at least one prior occasion," the children were left alone without adult supervision. The proceedings are replete with successive incidents of that species. The "at least one prior occasion" of neglect the petition cites, the evidence makes clear, was the incident of March 3, 1988, reported by the hot line and investigated by social worker Sommers of the Division of Family Services. On that day, Leah Giltner, a friend of the mother, called her but she was not there. The children were there alone. Giltner attempted to reach the mother next door, but she was not there either. Giltner continued to telephone every hour, but the mother was still not there, so she left work so that the children would not be alone. When she arrived, the eleven year old was not only baby-sitting for the other three sisters, but for two little boys whose mother had dropped them

there. Giltner remained all night until morning. She attempted to talk to the father of the appellant, but he abruptly hung up. That morning she arranged for a baby-sitter for the children and they were conducted there by the police.

The mother made the explanation that she left early that morning of March 3rd to visit a sick aunt in Mexico, Missouri, and that she had arranged for a baby-sitter to look after the children. The eleven year old said, however, that she did not know where her mother went, did not know she would be gone, and had no idea how to reach her.

■■■ The practice and procedure customary in proceedings in equity govern proceedings in the juvenile court; and hence our review is under Rule 73.01(c) and *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). *See In Interest of C.L.M.*, 625 S.W.2d 613, 614 (Mo. banc 1981). In that exercise, we sustain the adjudication unless, due deference to the judgment of the trial court accorded, the order nevertheless lacks support in substantial evidence. *Id.* The evidence supports the adjudication of jurisdiction under the petition by proof clear and convincing that the children are in need of the care and protection of the juvenile court. It is not essential to such an adjudication that the court find the condition of neglect dangerous, but only that the parent failed to provide that minimum quality of care the community expects and tolerates. *In Interest of E.J.*, 741 S.W.2d at 894[3]. The point of error is denied.

The order of disposition entered in each case removed the children from the home and custody of the mother to the custody of the respective father. The order in each case was prefaced by the finding that "reasonable efforts have been made to prevent or eliminate the need for removal of the children from their home." Such a determination is made a precondition to any order of disposition which removed a child from the home in a juvenile court proceeding. § 211.183.1, RSMo Supp 1988. The mother contends that the finding in each case that the Division of Family Services made reasonable efforts to avoid the need to remove the child from the home is without support in the substantial evidence and, moreover, does not constitute that articulated explanation of *reasonable efforts* the statute imposes.

Section 211.183, RSMo Supp 1988, directs this special regimen of fact finding in a juvenile court proceeding where the order of disposition removes a child from the home:

1. In juvenile court proceedings regarding the removal of a child from his home, the order of disposition shall include a determination of whether the Division of Family Services has made reasonable efforts to prevent or eliminate the need for removal of the child and, after removal, to make it possible for the child to return home. If the first contact with the family occurred during an emergency in which the child could not safely remain at home even with reasonable in-home services, the division shall be deemed to have made reasonable efforts to prevent or eliminate the need for removal.

2. "**Reasonable efforts**" means the exercise of reasonable diligence and care by the division to utilize all available services related to meeting the needs of the juvenile and the family.

3. In support of its determination of whether reasonable efforts have been made, the court shall enter findings, including a brief description of what preventive or reunification efforts were made and why further efforts could or could not have prevented or shortened the separation of the family. *The division shall have the burden of demonstrating reasonable efforts.*

4. The juvenile court may authorize the removal of the child even if the preventive and reunification efforts of the division have not been reasonable, but further efforts could not permit the child to remain at home.

5. Before a child may be removed from the parent, guardian, or custodian of the child by order of a juvenile court, excluding commitments to the division of youth services, *the court shall in its orders:*

(1) State whether removal of the child is necessary to protect the child and the reasons therefor;

(2) Describe the services available to the family before removal of the child, including in-home services;

(3) Describe the efforts made to provide those services relevant to the needs of the family before the removal of the child;

(4) State why efforts made to provide family services described did not prevent removal of the child; and

(5) State whether efforts made to prevent removal of the child were reasonable, based upon the needs of the family and child.

(Emphasis added).

Accordingly, a juvenile court may not order the removal of a child from the parent unless the evidence allows two species of cognate findings and such findings are actually entered: (1) that the Division of Family Services has used reasonable diligence to apply all available services to meet the needs of the juvenile and the family to prevent the need for the removal of the child and, in the event of removal, to make possible the return home of the child [§ 211.183.1–4] and (2) that the removal of the child is necessary to protect the child [§ 211.183.5(1) ].[1] The proponent of the petition bears the burden to prove *reasonable efforts* by the Division of Family Services—the evidence on which the first species of finding rests [§ 211.183.3]. The proponent also bears the burden to prove the evidence

on which the second species of finding rests. Rule 117.05(b); *In re Monnig*, 638 S.W.2d at 786[3]. In each instance the finding must be articulated, and even explained. The determination of *reasonable efforts* must be supported by "a brief description of what preventive or reunification efforts were made and why further efforts could or could not have prevented or shortened the separation of the family" [§ 211.183.3]. The determination to remove the child from the parent must be preceded by a finding that the removal of the child was necessary to protect the child and a detail of the evidence on which that ultimate finding rests. [§ 211.183.5(2), (3) ][2]

■ The order of disposition entered in each case lacks both the determination of whether or not the Division of Family Services made reasonable efforts to avoid the need to remove each child from the home, what the reasonable efforts were, and a detail of the evidence to explain those efforts. The juvenile officer responds that it was a child abuse hot line call coded as *emergency* that sent the Division of Family Services social worker to the home on April 7, 1988, and hence, under the statute, the division was "deemed to have made reasonable efforts to prevent or eliminate the need for removal." § 211.183.1. The complete text of that statutory component provides: "If the first contact with the family occurred during an emergency in which *the child could not safely remain at home even with reasonable in-home services,* the division shall be deemed to have made

---

**1.** In the singular circumstances delineated in § 211.183.1 and § 211.183.4, the juvenile court may order the removal of the child even without an antecedent *reasonable effort* to prevent the need for removal or to reunify the family after removal. § 211.183.1, 4. It is implicit in the statute that when the court resorts to the exceptional dispensations of emergency [§ 211.183.1] or where further efforts could not have availed to permit the child to remain at home [§ 211.183.4], an explanation why the child could not safely remain at home accompanies the order of disposition.

**2.** The series of findings the statute imposes as conditions precedent to a valid formulation of the order of disposition where a child is removed from the parent are not only cognate,

but coalescent. Subsection 5, although expressed in terms of protection of the child, rather than of reasonable efforts to prevent the need for removal, is redundant and even rescriptive of the reasonable efforts motif of subsections 1 through 4 of § 211.183. The evident explanation is that subsection 5 was added in 1987, two years after the original enactment. That subsection emulates the reasonable efforts determination required prior to placement of a child in foster care. Rule 119.06. It is evident also that the legislative value integral § 211.183 imposes on any disposition order to remove a child from a parent is the preservation of the integrity of the family consonant with the welfare of the child. *In re I.M.J.*, 428 S.W.2d 18, 22 (Mo.App. 1968).

reasonable efforts to prevent or eliminate the need for removal." [emphasis added]. It is compromise to the safety of the child even with reasonable in-home services that determines the emergency, and not any pseudo-emergency of the hot line. The statute does not mean for the hot line to preempt the role of evidence and adjudication.

The contention of such emergency made by the juvenile officer, so as to dispense with the *reasonable effort* precondition of the statute, moreover, is made all the more tenuous by lack of any allegation of emergency to the court. The paragraph of the form petition designed to invite the immediate assumption of jurisdiction by the court is simply not invoked.[3]

The order of disposition in each case violates the statutory mandate that *reasonable effort* by the Division of Social Services be proven, found by the court on evidence which sustains or excuses the finding, and then adjudicated, all antecedent to the removal of the child from the home. The emphatic direction of § 211.183, that only after reasonable effort to avoid the need for removal of a child from the home may the order for removal issue, expresses the legislative concern for the integrity of the family consonant with the welfare of the child. *In Interest of C.L.M.*, 625 S.W.2d at 617[6]. That section provides not only for the reasonable effort by the Division of Family Services to avoid the need for removal of the child, but also, "after removal, to make it possible for the child to return home." § 211.183.1. It contemplates the return of the child to the home, and imposes the duty of reasonable effort on the social agency to that end. That finding also lacks. *See* § 211.183.3. The order of disposition remains unformulated and insufficient as a judgment for change of custody.

The order of disposition under § 211.183, although a temporary order and so subject to modification, nevertheless implicates the

fundamental right of natural parents to rear their own children free of undue governmental interference. It is an interest due process protects by a clear and convincing standard of proof, as well as by other procedures. *Santosky v. Kramer*, 455 U.S. 745, 753–754, 102 S.Ct. 1388, 1394–95, 71 L.Ed.2d 599 [1–3] (1982); *In re Monnig*, 638 S.W.2d at 785. Those requirements rest on the palpable reality that the adjudication of parental neglect which empowers the juvenile court to assume jurisdiction over the child to the temporary exclusion of the parent constitutes prima facie evidence of permanent neglect, and so augurs a termination of the parental right altogether. *See* § 211.447.2(2), RSMo 1986. *In re Monnig* 638 S.W.2d at 786. The insistence of § 211.183 on a fastidious adjudication of reasonable effort before a juvenile court may remove a child from the home reflects the fundamental right at stake and the seriousness of its infringement.

The mother argues in any event that the recital in each of the judgments that reasonable efforts were made, even if sufficient as a finding under the statute, does not rest on substantial evidence, and hence each order of disposition must be set aside. We agree.

The assumption of jurisdiction by the court rests on evidence that on at least one occasion prior to April 7, 1988, the mother neglected the needs of the four children. That prior incident was on March 3 and 4 of 1988. That event, when the mother left the children alone until the next morning, was a matter of hot line report to Division of Family Services. Social worker Joda Summers investigated and reported. The report of social investigation made by the deputy juvenile officer of the March and April events—and received in evidence— notes "[t]here is no record of services given." That also is the evidence of social worker Joda Summers:

the reason that:

_____

_____

_____ "

---

3. "( ) The juvenile is in such condition or surrounding that his welfare requires that his custody be immediately assumed by the Court, for

Q. So by early April, from this incident in March, no steps had yet been taken to start protective services? [4]

A. No.

. . . .

Q. Well, I mean based upon what your recommendation was in early March, what normally would the Division of Family Services have done? Would it have been parenting classes?

A. Parenting classes—could have been.

. . . .

Q. But there would have been ongoing interviews—investigation—and then the determination would have been the level of services if any that would have been provided?

A. Yes.

The record is simply devoid of any evidence of an effort by the social agency "to utilize all available services related to meeting the needs of the juvenile and the family" to prevent the need for removal of the child from the home. § 211.183.2. The proponent of the petition failed its "burden of demonstrating reasonable efforts." § 211.183.3. The order of disposition in each case has no substantial evidence for support, and must be set aside.

The orders which transfer custody of the children from the mother to the respective fathers are set aside and the causes are remanded to the jurisdiction of the juvenile court.

All concur.

4. "Protective services", the witness explained, "means that somebody has regular contact with the family—tries to provide help if they need counseling, or whatever."