STATE of Missouri, Appellant,

v.

James E. BRATINA, Respondent.

No. SC 84060.

Supreme Court of Missouri,
En Banc.

April 23, 2002.

Lora E. Cooper, Asst. Pros. Atty., Cape Girardeau County, Jackson, for Appellant.

Stephen C. Wilson, Cape Girardeau, for Respondent.

MICHAEL A. WOLFF, Judge.

**Introduction**

James Bratina left his apartment in Jackson, Missouri, on January 15, 2001, at about 6:40 a.m., leaving behind the body of his deceased wife, Suyapa Bratina, and his daughter, Sidney Bratina, age 3. When Bratina left the apartment, he went to his place of work. He returned about three to four hours later. These are the facts alleged in a criminal complaint filed by the prosecuting attorney charging Bratina with the class D felony of abandonment of a corpse and the class A misdemeanor of endangering the welfare of a child in the second degree.

Bratina moved to dismiss the charge of abandonment of a corpse, asserting that the statute, section 194.425, is void for vagueness. The trial court granted the motion, declaring the statute unconstitutional. The state appeals. This Court has jurisdiction. *Mo. Const. article V, sec. 3*

The statute gives fair notice of the conduct that is deemed to be a crime. Thus, the statute does not violate the due process clause and is not void for vagueness. The judgment is reversed and the case is remanded.

**Abandonment of a Corpse**

The challenged statute, section 194.425 [1], reads in full:

1. A person commits the crime of abandonment of a corpse if that person abandons, disposes, deserts or leaves a corpse without properly reporting the location of the body to the proper law enforcement officials in that county.

2. Abandonment of a corpse is a class D felony.

There is a question as to what conduct is made criminal by this statute. Consider this scene from the American classic, *The Adventures of Huckleberry Finn* by Mark Twain, where Huck Finn and his friend Jim canoe over to a flooded island in the Mississippi. The pair comes upon a house and enters through an upstairs window. At daybreak, they look in the window. Huck, the narrator, describes their adventure:

There was something laying on the floor in the far corner that looked like a man. So Jim says:

"Hello, you!"

It didn't budge. So I hollered again, and Jim says:

"De man ain't asleep—he's dead. You hold still."

He went, and bent down and looked, and says:

"It's a dead man. Yes, indeedy; naked, too. He's ben shot in the back. I reck'n he's ben dead two er three days. Come in, Huck, but doan' look at his face—it's too gashly."

I didn't look at him at all. Jim threw some old rags over him but he

---

1. All Missouri citations are to RSMo 2000, unless otherwise stated.

needn't done it; I didn't want to see him.

[The narrator then recounts how Huck and Jim made a "good haul" of belongings in the house and then left:] I paddled over to the Illinois shore, and drifted down most a half a mile doing it. I crept up the dead water under the bank, and hadn't no accidents and didn't see nobody. We got home all safe.[2]

If Huck Finn and his friend Jim were real 21st century Missourians, might they be facing a D felony for abandonment of a corpse? They, after all, did "leave" a corpse that they had found.

Bratina makes a similar point, that someone walking down the street, an innocent bystander, would be committing a crime if he kept on walking without reporting the corpse to the proper authorities.

But Bratina is not a mere bystander. The body is that of his wife, the body was in his household, and he is the next of kin.

■ The concept of "abandonment" in the statute clearly is based upon a person having an interest in, or duty with respect to, the body. To abandon, the dictionary tells us, is "to cease to assert or exercise an interest, right or title to esp. with the intent of never again resuming or reasserting it . . . ." or "to forsake or desert esp. in spite of an allegiance, duty, or responsibility."[3] The words that the statute uses to describe the concept of abandonment are "abandon, disposes, deserts or leaves." The first three of these words contain the

concept that the person has a relationship or duty with respect to the body. To dispose of something implies that one has possession of it. Similarly, to desert—one of the synonyms of abandon—includes the concept of turning away from or withdrawing support or disrupting the bond of attachment or duty.[4]

The word "leaves" is, however, ambiguous but only when considered in isolation. Does it mean leaves, as in what Huck and Jim did, or leaves, as in mortuary attendants carrying and leaving a body on the front porch of a decedent's home when the relatives fail to pay for its disposition?

■ The word "leaves" is not used in isolation, but along with the words "abandons, disposes, deserts." Words are known by the company they keep, and these terms all have as part of their meaning a relationship or duty with respect to the dead body.[5]

The Court, of course, need not decide whether the statute, section 194.425, goes as far as to impose a duty on a stranger to notify the authorities when a dead body is discovered. Bratina is no stranger, as previously noted. The common law recognized a right of burial in a dead person, the right of society to its enforcement, and imposed a duty upon survivors and householders. *See* Percival E. Jackson, *The Law of Cadavers* 33–35 (2nd ed.1950). Survivors of the deceased exercise the privilege of controlling the burial and also assume the duty of properly caring for the body. At common law, the duty was im-

---

2. Samuel L. Clemens (Mark Twain), *The Adventures of Huckleberry Finn* 65–66 (Washington Square Press, 1950) (Originally published in 1884).

3. *Webster's Third New International Dictionary* 2 (3d ed.1993).

4. *Webster's Third New International Dictionary* 610 (3d ed.1993).

5. The maxim of statutory construction called *noscitur a sociis* (it is known from its associates) applies. The meaning of a word can be ascertained by referring to other words or phrases associated with it. *See Pollard v. Board of Police Com'rs*, 665 S.W.2d 333, 345 (Mo. banc 1984).

posed upon the householder, not the executor of the estate, because the performance of the burial function "cannot await the discovery of wills and their probate." *Id.* at 36. The common law expresses the universal understanding that proper treatment of dead bodies is necessary to a civilized society.[6]

Literature, which reflects human values, expresses this understanding. For instance, in *Antigone,* by Sophocles, the title character defies the king to give her brother, Oedipus, a proper burial, risking her life because she understands the importance of respecting the dead.[7] Moreover, science reinforces this common understanding: proper disposition of human remains is necessary to maintaining public health.

### The Vagueness Challenge

■■■ Section 194.425 makes criminal what the Court would consider *malum in se* (a wrong in itself). When a statute criminalizes conduct that is wrong in itself, the statute becomes less susceptible to a challenge of being void for vagueness because the evil that is being remedied is commonly understood. That is less exacting than the standard for criminal statutes that make conduct *malum prohibitum* (a wrong prohibited) where the conduct is unlawful because it is prohibited, not because it is wrong in itself. In the latter situations, the statute must be precise because a person would not have a common societal understanding that he or she is committing a crime.[8]

■■■ The standard for determining whether a statute is void for vagueness is whether the terms or words used in the statute are of common usage and are understandable by persons of ordinary intelligence. *State v. Mahurin,* 799 S.W.2d 840, 842 (Mo. banc 1990). Bratina complains that the words, "proper notice" and "proper law enforcement officials" do not convey to him any understanding of his duties under the law. "Proper notice" and "proper law enforcement officials" are terms that have plain and ordinary meanings and are quite understandable by a person of ordinary intelligence. *See State v. Allen,* 905 S.W.2d 874 (Mo. banc 1995). In their briefs in this Court, the parties agree that Bratina, after returning to his apartment, called 911. This action, if true, tends to undercut his contention that he had no understanding of what "properly reporting to proper law enforcement officials" might mean.

■■■ Section 194.425 does not specify the mental state necessary for the commission of the crime. Where that is so, section 562.021, requires the prosecution to show Bratina acted "purposely or knowingly." He left his dead wife in the apartment and went to work. The questions are whether he knew she was dead and whether he intended, at that point, to abandon her body. The fact that Bratina returned to the apartment some three to four hours later may negate the conclusion that he intended to abandon the body of his wife. The question of whether he is guilty of

---

6. State statutes also provide for disposition of dead bodies, assigning duties to coroners, section 58.460, and to those in custody of dead bodies to be buried at public expense, section 194.150.

7. Sophocles, *The Three Theban Plays: Antigone, Oedipus the King, Oedipus at Colonus,* (Robert Fagles, Bernard MacGregor Knox trans., Viking Penguin, 1984)

8. *See* Oliver Wendell Holmes, Jr., *The Common Law,* pp. 39–76 (Lecture II, The Criminal Law)(1881); John Calvin Jeffries, Jr., *Legality, Vagueness, and the Construction of Penal Statutes,* 71 Va. L.Rev.189, 205–219 (1985), and *United States v. McGoff,* 831 F.2d 1071, 1077 (D.C.Cir.1987).

abandonment of a corpse is, ultimately, a factual question. The jury will determine whether Bratina is guilty or not based on all the facts and circumstances of the case.

**Conclusion**

The statute gives fair notice to Bratina of the conduct that is declared to be criminal. The statute is not void for vagueness. The judgment of the trial court is reversed, and the case is remanded.

LIMBAUGH, C.J., WHITE, BENTON, LAURA DENVIR STITH, and PRICE, JJ., and NEWTON, Sp.J., concur.

RICHARD B. TEITELMAN, J., not participating.