**STATE of Missouri, Respondent,**

v.

**Brenda SELF, Appellant.**

No. SC 85662.

Supreme Court of Missouri,
En Banc.

Feb. 15, 2005.

758

Garrett C. Andersen, Caruthersville, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Shaun J. Mackelprang, Asst. Atty. Gen., Jefferson City, Michael B. Hazel, Prosecuting Atty., Kimberley A. Davenport, Asst. Prosecuting Atty., Caruthersville, for Respondent.

LAURA DENVIR STITH, Judge.

Brenda Self was convicted of failing to cause her child to attend school "regularly" in violation of Missouri's compulsory school attendance law. She appeals, alleging that the phrase "attend school regularly" as used in section 167.031.1 is unconstitutionally vague.[1] While Ms. Self raises constitutional issues regarding the meaning of the phrase "attend school regularly" as used in the statute, this Court need not resolve those issues here, for her conviction must be reversed on other grounds. Where a statute does not itself set forth a culpable mental state, then under section 562.021.3 the State is required to establish that the person acted knowingly or pur-

posely. Here, the State failed to establish that Ms. Self acted purposely or knowingly in failing to cause her child to attend school regularly. Therefore, it failed to prove an essential element of the crime. Double jeopardy precludes retrial when a conviction is reversed because the evidence was legally insufficient. This Court reverses and remands for entry of a judgment of acquittal.

## I. FACTUAL AND PROCEDURAL BACKGROUND

During the almost six-month period from August 22, 2002 through February 6, 2003, Brenda Self's fifteen-year-old child, Jennifer, missed approximately 40 days of school at the public school in which she was enrolled.[2] On February 6, the school reported these absences to the Pemiscot County prosecuting attorney. On March 6, 2003, the prosecutor charged Ms. Self with the class C misdemeanor of failing to cause her child to attend school on a regular basis, in violation of section 167.031, and punishable under section 167.061. Ms. Self entered a plea of not guilty.

Prior to trial, Ms. Self filed a motion to dismiss, alleging that section 167.031 was void for vagueness. The motion was overruled. Ms. Self agreed to waive her right to a jury trial in exchange for a recommendation that the court impose a sentence no greater than fifteen days in jail, execution of which would be suspended, and she would be placed on two years probation.

Ms. Self waived her right to a jury and a bench trial ensued. It was very short, comprising no more than 11 pages of transcript. The trial began with the prosecu-

---

1. All statutory citations are to RSMo 2000, unless otherwise indicated. Section 167.031 was recently amended by S.B. 968 2004, effective August 28, 2004, to allow metropolitan school districts to increase the maximum age

that children can be required to attend school to 17 years.

2. Jennifer Self turned fifteen in December of 2002.

tor's statement that the parties had reached an oral stipulation that he would recite during opening statement. In full, the prosecutor then stated as follows:

> Jennifer Self is the daughter of Brenda Self, the Defendant in this matter. Brenda Self is charged with the care, custody and control of this child. Jennifer Self was born December 24, 1987, making Jennifer 14 and then 15 years old during the academic school year of 2002 and 2003.
>
> This child, at those ages, is subject to the compulsory education laws. During this school year Jennifer Self was living in the home of Brenda Self. Also during this school year between the dates of August 22, 2002 and February 6, 2003, Jennifer Self missed 40 days of school.
>
> The State will present evidence regarding these absences and policies and procedures which are in place with the Caruthersville Accelerated Middle School and how they deal with cases of excessive absences. Due to Mrs. Self's failure to cause Jennifer to attend school on a regular basis, Jennifer Self had to attend summer school to advance to the next level.
>
> At the close of the evidence, the State will ask this Court to find the Defendant guilty and punish her accordingly.

Because no written copy of the stipulation was ever filed, it is not entirely clear which parts of the prosecutor's opening statement are intended to be included in the stipulation. Of course, this was not a guilty plea; the parties could not have intended to stipulate to the prosecutor's assertion of the ultimate issue whether Ms. Self had caused her daughter to fail to attend school regularly, or that the court should enter a judgment of guilty and punish her accordingly. Indeed, even where there is a guilty plea, the court has an independent duty to determine whether the defendant admits the facts essential to the judgment, and legal issues, such as what constitutes a failure to attend school regularly, are legal issues that this Court determines *de novo* on appeal; they are not matters for stipulation. This Court assumes as true for the purposes of this appeal only the facts stated by the prosecutor in his opening statement; it determines for itself the issues of law before the Court.[3]

Ms. Self's counsel offered no opening statement and presented only one piece of evidence, the Caruthersville Accelerated Middle School 2002–2003 Student/Parent Handbook, which describes the school's policy regarding attendance. The State's evidence was only slightly more lengthy. The prosecutor introduced Jennifer's attendance record for the almost six-month period at issue and the testimony of Paula DeBoise, the school's deputy juvenile officer, who had begun working at the school after the events in question but was able to identify the attendance record. Neither Ms. Self, Jennifer, nor the principal testified.

Based on the attendance record and the absence policy set out in the school's handbook, the judge found Ms. Self guilty of

---

**3.** *Gershman Inv. Corp. v. Danforth,* 517 S.W.2d 33, 35 (Mo. banc 1974) (the attorney general, as a member of the executive branch, has no judicial authority and may not declare the law; only courts have the authority to determine issues of law); *Morris v. State,* 482 S.W.2d 459, 460 (Mo.1972) (appellate court held that trial court's finding that guilty plea was understandingly made was erroneous when the trial court failed to determine what facts were admitted and whether those facts would result in defendant being guilty of charged offense); *Obermeyer v. Bank of America,* 140 S.W.3d 18, 22 (Mo. banc 2004) ("The reviewing court defers to the trial court's factual findings and credibility determinations, but examines questions of law *de novo*.").

one count of failure to cause a child to attend school regularly and sentenced her, in accordance with the prosecutor's recommendation, to 15 days in jail, suspended execution of the sentence, and placed her on two years probation. Ms. Self appeals. Because she challenges the constitutionality of a state statute, appeal is directly to this Court. Mo. Const. art. V, sec. 3.

## II. VAGUENESS CHALLENGE

■ The sole point of error Ms. Self raises is that section 167.031.1 of Missouri's compulsory school attendance law is unconstitutionally vague. It states in relevant part:

> "A parent, guardian or other person in this state having charge, control, or custody of a child between the ages of seven and sixteen years of age *shall cause the child to attend regularly* some public, private, parochial, parish, home school or a combination of such schools not less than the entire term of the school which the child attends ..."

Sec. 167.031.1 (emphasis added).

Ms. Self alleges that because section 167.031 does not define what it is to "cause [a] child to attend regularly" some school or combination of schools, this phrase is unconstitutionally vague. In support, she argues that various school districts have interpreted the phrase in inconsistent ways, so that what is acceptable attendance in one district may be referred for prosecution in another district. The State also asks the Court to reach the constitutional issue, stating in oral argument before this Court that it believed that, as a result of the lack of definition of the phrase "attend regularly," school districts could and do interpret this phrase in different ways. The State suggests that the legislature may have intended to give districts flexibility in defining what constitutes regular attendance in that district

and that such flexibility is appropriate as circumstances may differ in different areas of the state. The State further argues that the statute makes it permissible for a district to consider even a single missed day as a failure to attend school regularly if this is appropriate in the circumstances.

■ A statute is unconstitutionally vague if it does not give a person of ordinary intelligence sufficient warning as to the prohibited behavior. *Cocktail Fortune, Inc. v. Sup. of Liquor Control*, 994 S.W.2d 955, 957 (Mo. banc 1999). The vagueness doctrine is designed to help protect against arbitrary and discriminatory application of laws. *State v. Brown*, 660 S.W.2d 694, 697 (Mo. banc 1983). When reviewing a vagueness challenge, "it is not necessary to determine if a situation could be imagined in which the language used might be vague or confusing; the language is to be treated by applying it to the facts at hand." *State v. Young*, 695 S.W.2d 882, 884 (Mo. banc 1985). *Accord Cocktail Fortune*, 994 S.W.2d at 958–59. If a statute can be applied constitutionally to an individual, that person "will not be heard to attack the statute on the ground that impliedly it might also be taken as applying to other persons or other situations in which its application might be unconstitutional." *State v. Ellis*, 853 S.W.2d 440, 446 (Mo.App. E.D.1993), *quoting U.S. v. Raines*, 362 U.S. 17, 21, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960).

These principles are particularly applicable here. If the record before this Court in fact showed that the statute was so indefinite and confusing that the various school districts in this State took contradictory positions as to the meaning of the statutory phrase "cause the child to attend [school] regularly," and that it was being interpreted to make a parent criminally responsible simply upon a showing that the parent's child had failed to attend

school on a number of occasions that varied significantly in number from district to district, and further that this caused confusion and problems for the parties in the case then brought before the court, then serious constitutional questions about the statute would be presented. ·

■■■ But, a constitutional controversy cannot be manufactured in the trial court or on appeal in order to obtain an advisory opinion. While it is evident that both parties wish this Court to address the vagueness issue, it is not this Court's prerogative to offer advisory opinions on hypothetical issues that are not necessary to the resolution of the case before it. *See, e.g., Ellis,* 853 S.W.2d at 446; *State ex inf. Danforth v. Cason,* 507 S.W.2d 405, 418 (Mo. banc 1973); *State ex rel. Missouri Pub. Serv. Co. v. Elliott,* 434 S.W.2d 532, 536 (Mo. banc 1968); *Harris v. Consolid. School Dist. No. 8 C, Dunklin County,* 328 S.W.2d 646, 654 (Mo. banc 1959).

Here, while the parties on appeal assert that the statute is vague and has been inconsistently interpreted in the past, neither presented any evidence as to the practices of other districts or as to those districts' interpretations of the phrase in question, or included such alleged practices in their oral stipulation. In the absence of record support for the allegations of the parties that different districts interpret the statute in different and inconsistent ways, it is inappropriate and premature for this Court to address the constitutional issue raised.

Ms. Self was not charged with failing to cause her child to attend school on one or even a small number of days of school; she was charged with failing to cause her child to attend school for 40 days over a six-month period. No evidence was offered that Ms. Self was unsure whether it would violate the statute to cause her daughter to miss 40 days of school, nor that other districts treated 40 absences in a different manner. Ms. Self cannot properly bring a vagueness challenge based on hypothetical arbitrary and discriminatory application as to others when she has provided no evidence that the statute is unconstitutionally vague when applied to her situation. *See Cocktail Fortune,* 994 S.W.2d at 958–59; *Ellis,* 853 S.W.2d at 446; *Raines,* 362 U.S. at 21, 80 S.Ct. 519.

## III. *FAILURE OF STATE TO PROVE VIOLATION WAS KNOWING*

■■■ Although this Court declines to reach the constitutional vagueness challenge raised by Ms. Self, it reverses her conviction for the reason that the State failed to offer any evidence of *mens rea,* that is, that she acted *knowingly or purposely* in causing her child to fail to attend school regularly.

The State concedes that it did not specifically offer proof that her conduct was knowing or purposeful, but suggests that section 167.031 sets out a regulatory offense and may be violated without proof that the charged party knowingly or purposely violated the statute. It is, the State argues, a strict liability offense. Ms. Self noted in oral argument, and this Court agrees, that were this the case, then additional and serious constitutional questions would be raised. But, as was true in regard to the vagueness challenge, it is unnecessary to reach this issue, for the State is simply incorrect in arguing that section 167.061 provides for strict criminal liability for failure to comply with the compulsory attendance provisions of section 167.031.

■■■■ While neither˙section 167.031 nor section 167.061 expressly specify the mental state necessary for violation of the compulsory attendance law, it is well-set-

tled that, where a specific mental state is not prescribed in a statute, "a culpable mental state is nonetheless required and is established if a person acts purposely or knowingly ..." Sec. 562.021.3; *State v. Bratina,* 73 S.W.3d 625, 628 (Mo. banc 2002). A culpable mental state will be imputed to each statutory element, unless its imputation would be inconsistent with the purpose of the statute or "lead to an absurd or unjust result." Sec. 562.026.2. Legislative intent not to require a culpable mental state for each element of the crime must be clearly apparent before a particular statute will be construed not to require proof of such culpability. *See Id.; State v. Jones,* 865 S.W.2d 658, 661 (Mo. banc 1993).[4]

 Here, nothing in section 167.031 suggests that the legislature did not intend to require proof of a culpable mental state in causing non-attendance, specifically, proof that the parent acted knowingly or purposely. To the contrary, the necessity of proof of some level of scienter is implicit in the requirement that the parent "cause" their child to regularly attend school. To "cause" a child to do something implies an affirmative act on the part of the parent and requires that criminal responsibility for failure to comply with the statute be based on a failure to cause the child to attend, not merely on a lack of attendance *per se.* *Cf. In Re Monnig,* 638 S.W.2d 782, 788 (Mo.App. W.D.1982) (holding burden of proof must be on prosecution to prove that particular home school curriculum was not adequate, to avoid exposing parents "to the risk of criminal prosecution should their suppositions of the adequacy of the home curriculum be mistaken, *however in good faith,*" thus indicating mental state is relevant to guilt) (emphasis added).

 The burden was on the State to prove that Ms. Self acted knowingly or purposely in causing her child not to attend school regularly. *See State v. Erwin,* 848 S.W.2d 476, 482 (Mo. banc 1993). The State acknowledges that it did not specifically submit evidence as to her culpable mental state, but suggested at oral argument that because this issue was not contested below, this Court should treat the issue as conceded or should remand to allow evidence to be offered on this issue.

 While the sufficiency of the evidence on this issue was not properly preserved below,[5] Ms. Self did assert below that the information failed to charge all the elements of the offense and did ultimately assert at oral argument in this Court that proof of *mens rea* was insufficient. In any event, it is always the State's burden to establish a factual basis for elements of the crime charged. *Cf.* Rule 24.02(e); *Hoskin v. State,* 863 S.W.2d 637, 639 (Mo.App. E.D.1993) (where a criminal defendant enters a guilty plea, the court is still required to establish a factual basis for the plea before judgment can be entered). "The Court may 'not supply missing evidence, or give the [State] the benefit of unreasonable, speculative or forced inferences.'" *State v. Whalen,* 49 S.W.3d 181, 184 (Mo. banc 2001). "If the evidence is insufficient to sustain a conviction, plain error affecting substantial

4. However, if a statute prescribes a culpable mental state to a particular element of a crime, then the prescribed culpable mental state is applicable only to the defined elements and not to any other element of such crime. Sec. 562.021.2.

5. This Court notes that issues relating to the constitutionality of statutes are better determined on a complete record, and that a record will seldom be sufficient to allow the Court to address such a fundamental issue when the case was effectively tried, as was this one, as a "test case" with only token adversary positions taken by the parties.

rights is involved from which manifest injustice must have resulted." *State v. Withrow,* 8 S.W.3d 75, 77 (Mo. banc 1999); Rule 30.20. *See also State v. Smith,* 33 S.W.3d 648, 652 (Mo.App. W.D.2000); *State v. Rehberg,* 919 S.W.2d 543, 551–52 (Mo.App. W.D.1995).

This Court therefore must determine whether there was sufficient evidence from which the fact-finder could reasonably have found Ms. Self guilty beyond a reasonable doubt, accepting as true all evidence and inferences tending to prove guilt and ignoring all contrary evidence and inferences. *State v. Sladek,* 835 S.W.2d 308, 310 (Mo. banc 1992).

While the record does show that many of Jennifer's absences were excused based on notes indicating they were for doctor's appointments, nothing in the record indicates that these notes were from her mother, and on the majority of occasions there is no reference to a note in the record. Neither does the record show that Ms. Self knew that the district would not consider doctor's appointments and illness due to Jennifer's pregnancy to be excused and so not a basis for prosecution for violation of the compulsory attendance law. Rather, there is evidence to the contrary.

The Caruthersville Accelerated Middle School's Student/Parent Handbook sets out the school's attendance policy. It states that students are allowed seven absences in a semester. If the student has 10 or more absences in a semester, then, "an attendance letter will be filed with the Prosecuting Attorney, Juvenile Authorities, Division of Family Services, and Board of Education." Clearly, Jennifer was absent more than the permitted number of times during each semester. But, nothing shows that Ms. Self understood that an attendance letter meant that she was subject to criminal prosecution, nor is there any showing that she was aware of

more than 10 absences per semester, much less that she caused them.

Further confusion arises as a result of other terms in the handbook. At one point the handbook provides that absences will be "excused" if they are due to student illness, doctor's appointments, or pre-arranged absences. This seems to conflict with the handbook's statement at another point that the fact that absences are excused will not prevent the school from implementing "consequences", including notification of authorities, if a student cumulates more than 10 excused and unexcused absences in a semester. The latter would indicate that no absences are "excused" in a true sense. At yet a third point, in seeming contradiction, the Handbook says that, "in the case of a prolonged illness or extended absence under a doctor's care, the parent should notify the principal so that such circumstances can be reviewed."

Read together, these statements suggest that the attendance policy will not apply where the school is satisfied that the lack of attendance is due to prolonged illness or extended absence from school. This is in accord with section 167.031 to the effect that:

> A child who, to the satisfaction of the superintendent of public schools of the district in which he resides, or if there is no superintendent then the chief school officer, is determined to be mentally or *physically incapacitated may be excused from attendance at school* for the full time required, or any part thereof . . .

Sec. 167.031.1(1) (emphasis added). In such cases, there is no violation of the compulsory school attendance law.

Here, while Jennifer had missed 40 days of school over two semesters, *all but 17 of those absences were noted on her record to*

have resulted from either illness or a doctor's appointment. Many of the other absences are simply silent as to whether they are related to her medical condition. Further, Jennifer's attendance record states below the list of absences, "Pregnant. Mr. McBride delivered homebound application. It has not been returned."

These facts are sufficient to show that, to the satisfaction of the school authorities, Jennifer had been determined to be physically unable to attend school for the full time required and to have been given excused absences on those occasions on which she was ill or seeking medical care due to her pregnancy. No contrary evidence was presented that Ms. Self did know that, despite the excused nature of most of Jennifer's absences due to physical incapacity caused by her pregnancy, her absences could put her in violation of the compulsory attendance laws, or that she otherwise caused the excessive absences.

In the absence of any proof on this issue, this Court cannot supply a forced inference that Ms. Self purposefully or knowingly failed to cause her child to attend school. See Whalen, 49 S.W.3d at 184. The double jeopardy clause precludes remand for a second trial when a conviction is reversed because the evidence introduced at the first trial was legally insufficient. Burks v. U.S., 437 U.S. 1, 18, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); State v. Furne, 642 S.W.2d 614, 617 (Mo. banc 1982); State v. O'Brien, 857 S.W.2d 212, 221 (Mo. banc 1993). As the State failed to prove an essential element of the charged offense, Ms. Self's conviction is based on insufficient evidence and must be reversed.

For the reasons set out above, the judgment is reversed and the cause remanded for entry of a judgment of acquittal.

WHITE, C.J., WOLFF, and TEITELMAN, JJ., and CALLAHAN, Sp.J., concur; PRICE, J., concurs in part and dissents in part in separate opinion filed; LIMBAUGH, J., concurs in opinion of PRICE, J.

RUSSELL, J., not participating.

WILLIAM RAY PRICE, JR., Judge, concurring in part and dissenting in part.

I.

I concur in part and dissent in part from the principal opinion. I agree that the statute is not unconstitutionally vague when applied to Ms. Self. See Cocktail Fortune, Inc. v. Sup. of Liquor Control, 994 S.W.2d 955, 958–59 (Mo. banc 1999); State v. Mahan, 971 S.W.2d 307, 312 (Mo. banc 1998). I also agree with the majority opinion that when a statute does not provide a culpable mental state, under section 562.021.3, RSMo 2000, the state must establish knowing or purposeful conduct.

I respectfully dissent from the majority opinion that there was insufficient evidence for an inference of such a mental state. Ms. Self waived her right to a jury trial. On appeal, the trial court's "findings shall have the force and effect of the verdict of a jury." Rule 27.01. This Court "will affirm the trial court's judgment if there is substantial evidence to support its findings." State v. Shaw, 847 S.W.2d 768, 779 (1993). The statute requires that "A parent . . . shall cause the child to attend regularly . . . ." Sec. 167.031.1, RSMo 2000. In this case, Ms. Self's daughter missed 23 days, which were excused by the school. She also missed another 17 days that were not. The parties stipulated to this and a jury trial was waived in exchange for a lighter sentence. The circuit court accepted the stipulation of facts. Evidence was presented from the school that Ms. Self had notice of the absences. The judge

found her guilty of one count of failure to cause a child to attend school. This Court has an obligation to affirm the circuit court, even where the results may seem harsh, where there is substantial evidence to support its judgment.