

# SUPREME COURT OF MISSOURI
## en banc

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | *Opinion issued August 15, 2023* |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | No. SC99719 |
| | ) | |
| CAITLYN CORDELL WILLIAMS, | ) | |
| | ) | |
| Appellant. | ) | |
| and | | |
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | No. SC99823 |
| | ) | |
| TAMARAE LYNN LARUE, | ) | |
| | ) | |
| Appellant. | ) | |

**APPEALS FROM THE CIRCUIT COURT OF LACLEDE COUNTY**
**The Honorable Steve Jackson, Judge**
**The Honorable Larry Winfrey, Judge**

Caitlyn Williams was convicted of failing to cause her daughter, E.P., to attend school on a regular basis in violation of Missouri's compulsory attendance law. Tamarae LaRue was convicted of failing to cause her son, A.L., to attend school on a regular basis in violation of Missouri's compulsory attendance law. Williams and LaRue ("Parents")

appeal from their judgments of conviction, raising two claims of insufficient evidence and challenging section 167.031.1[1] as being unconstitutionally vague. Relying on the plain meaning of the language in that statute in the context of school attendance, this Court holds section 167.031.1 is not unconstitutionally vague as applied to Parents. Under the appropriate standard of review, sufficient evidence existed to find Parents knowingly failed to cause their children to attend school on a regular basis after their children were enrolled. The circuit court's judgment in each case is affirmed.

## Factual and Procedural Background

### *Caitlyn Williams*

The State charged Williams with the class C misdemeanor of violating the compulsory attendance law, alleging Williams, in violation of section 167.031, knowingly failed to cause a child under her custody or control to attend a required academic program on a regular basis on or between August 23, 2021, and February 15, 2022. Williams filed a motion to quash and dismiss, alleging the statute was unconstitutionally vague. The motion was overruled. At a bench trial, the State introduced testimony from school employees and documentation regarding the child's attendance.

During the 2021-2022 school year, Williams' daughter, who was born in December 2014, was enrolled in first grade at Esther Elementary in Lebanon. Williams was the child's sole custodian. When Williams completed her child's online registration for school,

---

[1] All statutory references are to RSMo 2016, unless otherwise specified.

she checked a box indicating she had read the student handbook. The attendance portion of the handbook provided:

> The Lebanon R-III School District believes that regular classroom attendance is important to the instructional process, and that frequent absences disrupt the learning process. The state mandates that students maintain 90% or higher attendance each year in school and that continued and valuable learning cannot take place without regular attendance. Poor attendance may limit accomplishments and reinforce a habit, which will handicap the individual in future education or employment. Therefore, in accordance with the laws of the state of Missouri, the Lebanon R-III School District requires regular attendance of all school age children each day school is in session.

The handbook required parents to "[e]ncourage their student to … attend school every day[;]" "[m]ake every effort to schedule appointments for students when school is not in session (it is understood that this is not always possible, but should be attempted)[;]" and "[n]otify school with every absence, tardy or early withdrawal." "Absences caused by personal illness or injury, illness within the family which necessitates that a student be absent, and perhaps other extenuating circumstances, need to be communicated to the student's school." Vacation time was suggested to be taken when school was not in session.

Per the policy outlined in the handbook, when E.P. reached six absences in November 2021, the school sent Williams a letter. The letter informed Williams of the number of absences and that her daughter's attendance percentage was approximately 85 percent. According to the letter, "The Missouri Department of Elementary and Secondary Education states that students should have a 90% or higher attendance percentage."

The letter also stated: "If you have documentation indicating the reason for an absence, please submit it to your child's school office." Another letter was sent to Williams in early December when her child accumulated nine absences. In early March 2022, the school sent Williams a letter advising her that her child had missed 15 days of school.

Parent contact regarding the reason a student is not at school is recorded. E.P.'s official attendance record included the following full days of absences during the charged period of time,[2] along with the reasons provided for the absence: 9/1/21 ("mom left vm out ill today"); 9/29/21 ("Mom called- ear infection"); 10/13/21 ("Mom called- sick"); 10/14/21 ("Mom called- bad cough"); 10/20/21 ("Mom called- dentist appointment"); 11/8/21 ("Mom called- ringworm"); 11/11/21 (no reason provided); 11/12/21 (no reason provided); 12/3/21 (no reason provided); 12/14/21 (no reason provided); 12/15/21 (no reason provided);[3] 1/25/22 (no reason provided); 1/27/22 (no reason provided); 1/31/22 (no reason provided); and 2/1/22 (no reason provided). The child had nine absences that were unexcused/unverified in the charged time period. Williams failed to contact the school regarding the reasons her child did not attend these days.

According to the assistant principal, the child's lack of attendance affected her performance in the classroom. The assistant principal was never made aware of any

---

[2] The record also includes multiple late check-ins.
[3] On December 15, 2021, Williams brought her child to the school to collect donations the staff had accumulated for the family. The teacher requested the child to stay at school, but she was not allowed to stay.

medical reason preventing the child from attending school. The attendance advisor for the school district testified she talked with Williams "about the need to get her child to school, and to – and to make it a [sic] regular." Williams never articulated to the attendance advisor any specific reasons why her child could not be at school.

The circuit court found Williams guilty. She was sentenced to serve seven days in the Laclede County jail with the sentence to run concurrently with another sentence she was already serving. Williams appeals.[4]

*Tamarae LaRue*

The State charged LaRue with the class C misdemeanor of violating the compulsory attendance law, alleging LaRue, in violation of section 167.031, knowingly failed to cause a child under her custody or control to attend a required academic program on a regular basis on or between August 23, 2021,[5] and February 16, 2022. LaRue filed a motion to quash and dismiss, alleging the statute was unconstitutionally vague. The motion was overruled. At a bench trial, the State introduced testimony from school employees and documentation regarding the child's attendance.

During the 2021-2022 school year, LaRue's son, who was born in October 2015, was enrolled in kindergarten at Esther Elementary in Lebanon. LaRue was the child's sole custodian. When LaRue completed her child's online registration for school, she checked

---

[4] Because Williams challenges the constitutional validity of section 167.031.1, appeal is directly to this Court. Mo. Const. art. V, sec. 3.

[5] The information erroneously stated the beginning date as August 23, 2022.

5

a box indicating she had read the student handbook. The attendance portion of the handbook was the same as that set forth above.

LaRue's son did not enroll in kindergarten until September 9, 2021. His attendance issues began the same month he enrolled, and the assistant principal had a conversation with LaRue to determine what support the school could provide to assist the child in attending. LaRue was informed her child was missing important things when he was not at school. Per the policy outlined in the handbook, when A.L. reached six absences in November 2021, the school sent LaRue a letter. The letter informed LaRue of the number of absences and that her son's attendance percentage was approximately 86 percent. According to the letter, "The Missouri Department of Elementary and Secondary Education states that students should have a 90% or higher attendance percentage." The letter also stated: "If you have documentation indicating the reason for an absence, please submit it to your child's school office." Another letter was sent to LaRue in mid-January when her child accumulated nine absences.

Parent contact regarding the reason a student is not at school is recorded. The child's official attendance record included the following full days of absences during the charged period of time,[6] along with the reasons provided for the absence: 9/9/21 ("mom had car troubles"); 9/14/21 ("dr appt per mom"); 9/15/21 ("fever per mom"); 10/25/21 ("Mom called- at dad's in Iowa"); 10/29/21 (no reason provided); 11/19/21 (no reason provided); 12/15/21 (no reason provided); 1/5/22 ("overslept and sick per mom-- dr appt 1/6/22");

---

[6] The record also includes multiple late check-ins.

1/11/22 ("per mom choice"); 1/12/22 (no reason provided); 1/13/22 ("Check-In at 11:45 am by mom"); 1/18/22 (no reason provided); 1/27/22 (no reason provided); 1/28/22 (no reason provided). The child had seven absences that were unexcused/unverified in the charged time period. LaRue failed to contact the school regarding the reasons the child did not attend these days.

The assistant principal was never made aware of any medical reason preventing the child from attending school. If the assistant principal had received information that the child had a medical issue, the issue of absences would not have been pursued. The attendance advisor for the school district testified she talked with LaRue multiple times about attendance issues.

The circuit court found LaRue guilty. She was sentenced to serve fifteen days in the Laclede County jail. The circuit court suspended execution of the sentence and placed LaRue on probation for a term of two years. LaRue appeals.[7]

**Analysis**

Parents challenge the sufficiency of the evidence in two regards. First, they contend the State failed to prove beyond a reasonable doubt that their conduct was a purposeful or knowing violation of the statute. Second, they argue the State did not prove beyond a reasonable doubt that the children's attendance was not sufficiently "regular" to constitute a violation of the statute. In their final points relied on, Parents assert section 167.031.1 is

---

[7] Because LaRue challenges the constitutional validity of section 167.031.1, appeal is directly to this Court. Mo. Const. art. V, sec. 3.

unconstitutionally vague because the statute fails to give a person of ordinary intelligence fair notice that her contemplated conduct is forbidden and allows for arbitrary and discriminatory application. This Court considers these points in reverse order.

### *Section 167.031.1 Is Not Unconstitutionally Vague as Applied Here*

This Court reviews *de novo* the legal issue of the constitutional validity of a statute. *State v. Richard*, 298 S.W.3d 529, 531 (Mo. banc 2009). A challenge to the constitutional validity of a statute must overcome the presumption that a statute is constitutional. *State v. Young*, 695 S.W.2d 882, 883 (Mo. banc 1985). "Statutes must, if possible, be construed as consistent with the Constitution; doubts are to be resolved in favor of validity[.]" *Id.* (citations omitted).

"[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *State v. Faruqi*, 344 S.W.3d 193, 199 (Mo. banc 2011). "The test in enforcing the doctrine is whether the language conveys to a person of ordinary intelligence a sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *Cocktail Fortune, Inc. v. Supervisor of Liquor Control*, 994 S.W.2d 955, 957 (Mo. banc 1999). The language is to be evaluated by applying it to the facts at hand, not to hypothetical scenarios. *Id.* at 958-59.

As applicable to the age of the children in this case,[8] section 167.031.1 provides:

---

[8] Williams' child was six years old at the beginning of the academic year. LaRue's child was five years old at the time he was enrolled.

Any parent, guardian or other person who enrolls a child between the ages of five and seven years in a public school program of academic instruction shall cause such child to attend the academic program *on a regular basis*, according to this section. Nonattendance by such child shall cause such parent, guardian or other responsible person to be in violation of the provisions of section 167.061, except as provided by this section.

(Emphasis added). Violation of section 167.031 is a class C misdemeanor. Section 167.061. Two exceptions relieve the party responsible for enrolling such child from violating the statute due to a child's nonattendance. First, once enrolled, a child between five and seven years old can be excused from attendance at school upon a written request the child be removed from the school's rolls. Section 167.031.1(3). Second, section 167.031.1(1) provides:

A child who, to the satisfaction of the superintendent of public schools of the district in which he resides, or if there is no superintendent then the chief school officer, is determined to be mentally or physically incapacitated may be excused from attendance at school for the full time required, or any part thereof[.]

According to Parents, section 167.031.1 fails to give a person of ordinary intelligence fair notice that his or her contemplated conduct is forbidden insofar as it fails to clearly define the phrase "a regular basis" and lacks sufficient specificity to prevent arbitrary and discriminatory enforcement. Parents posit the school district itself, per the handbook, has defined "regular" as 90 percent attendance. The State contends the phrase requires daily attendance on those days of the week that school is in session.

Although the phrase "regular basis" is not defined by statute, "phrases shall be taken in their plain or ordinary and usual sense." Section 1.090. The court of appeals has examined the plain meaning of the phrase "regularly provides home day care services" in

9

the context of a home day care exception in a homeowners policy. *Union Mut. Ins. Co. v. Brown*, 809 S.W.2d 144, 145 (Mo. App. 1991). In *Brown*, the home day care services were provided every Tuesday and Thursday with some deviation, and the argument was asserted that such provision was not "regular". *Id.* at 146. The court of appeals rejected the argument, reasoning:

> Giving the word "regular" its plain meaning, we find that this was a regular provision of services. In the context of this exclusion, the definition of "regular" as "steady or uniform in course, practice or occurrence; not subject to unexplained or irrational variation" and "returning, recurring or received at stated, fixed or uniform intervals" is appropriate. Webster's Third International Dictionary. It was not necessary that the care be full time. "The word, 'regularly,' is not synonymous with constantly or continuously." *Fowler v. Baalmann, Inc.*, 361 Mo. 204, 234 S.W.2d 11, 14 (1950). The fact that care was not provided on holidays or during illness or that days were occasionally shifted does not defeat the regularity of the arrangement since these are expected and rational exceptions to any day care arrangement.

*Id.*

In the context of a public school program of academic instruction, the phrase "to attend the academic program on a regular basis" means to attend school on those days the school is in session. This abides by the ordinary meaning of "regular" as "steady or uniform in course, practice or occurrence; not subject to unexplained or irrational variation" and "returning, recurring or received at stated, fixed or uniform intervals."[9] *See id.* Academic calendars for the school districts in Missouri establish the intervals at which

---

[9] This also conforms with the synonyms for "regular," which include "normal," "typical," and "natural." *Webster's Third New International Dictionary of the English Language* 1913 (3d ed. 2002). Children attending school according to the academic year, subject to holidays, sick days, and other necessary excusals, is engrained in our modern society.

10

attendance occurs: typically, although not exclusively, a five-day school week. *See* section 171.031.1. Section 167.031.1 defines the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited. When measured by common understanding and practices, no Missouri parent would conclude attendance "on a regular basis" means anything less than having their child go to school on those days the school is in session.

Of course, the statute enumerates certain exceptions that would prevent a parent from running afoul of the statutory mandate for their child's attendance, but such exceptions are not present based on the record in this case. Parents never elected to remove their children from the school's rolls. *See* section 167.031.1(3). Parents likewise failed to demonstrate their children were mentally or physically incapacitated to the satisfaction of school officials. *See* section 167.031.1(1). Williams' daughter missed nine days of school with no explanation to the school. LaRue's son missed seven days of school with no explanation to the school. These absences constitute irregular attendance.[10] Section 167.031.1 adequately conveys the meaning of "on a regular basis" under the facts here.

This Court also finds that, on the record here, section 167.031.1's requirement that the attendance be "on a regular basis" does not permit arbitrary and discriminatory application. Parents reference differences between the attendance policy presented in this

---

[10] Given the occurrence of absences without explanation, this Court does not address whether the absences for which Parents contacted the school constituted exceptions under section 167.031.1(1).

school district and that discussed in *State v. Self*, 155 S.W.3d 756 (Mo. banc 2005), a case in which this Court declined to address the purported vagueness issue of section 167.031.1. Comparing the policy of another district as it existed nearly two decades ago to the current policy of the Lebanon R-III School District is insufficient to demonstrate arbitrary enforcement. *See id.* at 760-61 ("If the record before this Court in fact showed that the statute was so indefinite and confusing that the various school districts in this State took contradictory positions as to the meaning of the statutory phrase … and that it was being interpreted to make a parent criminally responsible simply upon a showing that the parent's child had failed to attend school on a number of occasions that varied significantly in number from district to district, and further that this caused confusion and problems for the parties in the case then brought before the court, then serious constitutional questions about the statute would be presented."). Moreover, a school's attendance policy does not change the common or customary meaning of the word "regular." The vagueness challenge by the Parents fails.

In concluding that "to attend the academic program on a regular basis" means to attend school on those days the school is in session, this Court is aware of the implication of such meaning if taken to an extreme. Nevertheless, this Court is bound by its duty "to ascertain the intent of the legislature from the language used and to consider the words used in their plain and ordinary meaning." *Turner v. Sch. Dist. of Clayton*, 318 S.W.3d 660, 665 (Mo. banc 2010). In addition to the statute providing authority for school officials to excuse attendance when a child is mentally or physically unable to attend, section

12

167.031.1(1), the potential of enforcement of the law in marginal cases of noncompliance is ameliorated both by the discretion of school officials to choose not to report minor noncompliance and of prosecutors to choose not to prosecute in those cases.

### *Sufficient Evidence Supported the Convictions*

In reviewing the sufficiency of the evidence, this Court assesses whether sufficient evidence existed from which the trier of fact could have reasonably found guilt. *State v. Porter*, 439 S.W.3d 208, 211 (Mo. banc 2014). "All evidence and inferences favorable to the State are accepted as true, and all evidence and inference to the contrary are rejected." *Id.*

Parents assert the State did not prove beyond a reasonable doubt that their children's attendance, at a certain percentage, was not sufficiently "regular" to constitute a violation of the statute. Parents rely on the handbook's reference to attendance of 90 percent or higher for the school year. Given the date both were charged, Parents argue their children could have met the requisite attendance rate over the course of the entire year. Parents further question why the percentage is set at 90 percent.

Because section 167.031.1 does not mandate a child attend a certain percentage of a school term, this Court finds any discussion of percentages to be of little relevance. Parents were required to cause their children to attend the academic program on a regular basis. *See* section 167.031.1. As discussed previously, each child had multiple absences for which the parent failed to provide any explanation to the school for why the child was not attending. Consequently, this nonattendance was not excused pursuant to the statute.

*Id.* ("Nonattendance by such child shall cause such parent, guardian or other responsible person to be in violation of the provisions of section 167.061, except as provided by this section.").

Parents further contend the State failed to prove they acted knowingly or purposely in causing their child not to attend school regularly. "[T]he necessity of proof of some level of scienter is implicit in the requirement that the parent 'cause' their child to regularly attend school." *Self*, 155 S.W.3d at 762. This Court has previously held the State is required to prove the party responsible for the child "acted knowingly or purposely in causing her child not to attend school regularly." *Id.*

In *Self*, the parent's conviction was reversed upon this Court's determination that a fact-finder could not have reasonably found the parent guilty beyond a reasonable doubt. *Id.* at 763-64. In that case, a 15-year-old student missed approximately 40 days of school over the course of roughly six months. *Id.* at 758. The student handbook, which outlined the absence policy of the district, and the student's attendance record were admitted as evidence. *Id.* at 759. The student's attendance record indicated the student was pregnant. *Id.* at 764. This Court relied on the student's physical incapacitation due to her pregnancy, which had been shown to the satisfaction of the school authorities, to show the State failed to prove a culpable mental state on behalf of the parent. *Id.* Various statements in the attendance policy suggested consequences for failure to attend would not apply if school officials determined the child was not attending due to prolonged illness. *Id.*; *see also* section 167.031.1(1), RSMo 2000. "No contrary evidence was presented that Ms. Self did

14

know that, despite the excused nature of most of [the child's] absences due to physical incapacity caused by her pregnancy, her absences could put her in violation of the compulsory attendance laws, or that she otherwise caused the excessive absences." *Self*, 155 S.W.3d at 764.

The cases at bar are unlike *Self*. Each involves a young student with no physical incapacitation. Neither Williams nor LaRue was provided information by the school to suggest there would be no consequences for each child's failure to attend. Rather, school officials consistently communicated that regular attendance was required. This communication occurred through the handbook, through the letters sent, and through conversations with school officials.

Williams asserts her conduct in allowing her child to be absent from school was not a purposeful or knowing violation of the statute because she notified the school her child was sick on six occasions and the handbook did not inform parents that absences caused by illness are unexcused. Williams argues if these six occasions are not counted as absences, her child's attendance percentage is above 90 percent. LaRue makes a similar argument, suggesting that if her child's sick days and verified absences are removed from consideration, her child's attendance was at 90 percent. Again, however, a child's percentage of attendance is not determinative. Williams' child was absent on nine occasions without any communication to the school detailing the reason for the absence. LaRue's child was absent on seven occasions without any communication to the school detailing the reason for the absence. This nonattendance was not excused by any

15

circumstance provided for in the statute. Given the notice provided to each parent and that each parent was in control of their young child, evidence existed to support the inference that each parent knowingly failed to cause their child to attend school on a regular basis. Unlike in *Self*, such inference is not unreasonable. *See id.*

## Conclusion

For the reasons set forth above, the circuit court's judgment in each case is affirmed.

_____
Robin Ransom, Judge

Russell, C.J., Powell, Breckenridge,
Fischer and Wilson, JJ., concur.
Draper, J., not participating.

16